UNITED STATES of America, Appellant,

v.

Herman BANERMAN et al., Appellees.

No. 822, Docket 76–1569.

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1977.

Decided March 22, 1977.

Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y.), Brooklyn, N. Y., for appellant.

Carl D. Bernstein, New York City (Kronen & Bernstein, New York City), for appellees Banerman, Cioffi and Mengrone.

Kenneth J. Aronson, Brooklyn, N. Y. (Hochheiser & Cohen, Brooklyn, N. Y.), for appellee Lemanski.

Before MULLIGAN and OAKES, Circuit Judges and BRYAN, District Judge.*

MULLIGAN, Circuit Judge:

This is an appeal by the United States from an order of the United States District Court for the Eastern District of New York, Hon. George C. Pratt, suppressing evidence against the five named appellees.[1] The sole issue before us is whether they have standing to contest a warrantless search of a garage in Brooklyn, New York. We affirm the order of the district court.

## I

In late August 1975, a tractor-trailer containing a load of Stanley tools was stolen from the premises of a truck leasing company in Bridgeport, Connecticut. The tools were in the course of interstate transit from Connecticut to Illinois. The tractor without the trailer was later found in Staten Island. In conjunction with its investigation of the case, the FBI established a surveillance of a two-story garage building at 226 39th Street, Brooklyn, New York which was leased to "No-Name Transportation Inc." On the afternoon of September 2, 1975 the appellees Schnitzer and Lemanski were observed driving separate vehicles

which they double-parked in the street adjacent to the garage door before they entered the building. Later that afternoon a truck was driven out of the garage, made a U-turn in the street and was driven back in, cab first. Shortly thereafter the defendant Montevecchi drove up to the garage and entered. The agents observed cartons being removed from the building and placed in the trunk of Schnitzer's car. The defendant Schneider was observed leaving the building and moving his car behind Schnitzer's vehicle. Four agents drove up to the building and upon seeing them Schneider fled into the garage where he was arrested. The agents discovered cartons of Stanley tools on the floor and in trucks parked in the garage. Another agent went upstairs to the second floor where he found Montevecchi together with the five named appellees in an office which also contained Stanley cartons. All were placed under arrest. Schnitzer's car trunk was opened and four cartons of Stanley tools removed.

The defendants were charged in a two-count indictment with unlawful possession on September 2, 1975 of Stanley hand tools recently stolen from an interstate shipment, 18 U.S.C. §§ 659 and 2, and with conspiracy to possess the tools, 18 U.S.C. § 371. After a four-day hearing the district court granted the motion to suppress all evidence in the case seized as the result of the warrantless search of the garage. The court found that the United States had failed to establish probable cause for the arrest of Schneider, and therefore had not shown exigent circumstances justifying the entry into the building. At the suppression hearing the United States Attorney conceded in open court that all the defendants had standing to contest the validity of the search and seizure inside the premises at 226 39th Street, stating:

> They, Mr. Montevecchi and Mr. Schneider, have a proprietary interest in the

---

* Frederick vP. Bryan, United States District Judge of the Southern District of New York, sitting by designation.

1. The appeal by the United States is authorized by 18 U.S.C. § 3731 which allows a government appeal if the United States Attorney has certified to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. This certification was filed on December 1, 1976.

premises in view of their position with the No Name Transportation Corporation. And the other defendants [the appellees here] were all clearly inside the premises at the time of the search and seizure. So clearly there was the expectation of privacy. And we do not contest their standing.[2]

This prior concession of standing is not binding upon the government since standing involves a question of law. *United States v. Tortorello,* 533 F.2d 809, 812 (2d Cir.), cert. denied, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976). The government then moved on October 26, 1976 to reopen the suppression hearing on the ground that there was additional evidence to establish probable cause for the arrest of the defendant Schneider as well as the failure of the appellees here to establish their standing to contest the legality of the search. After argument the court denied the motion by order on November 22, 1976. As indicated, the appeal of the United States is limited to the standing of the appellees and there is no issue of probable cause before us.

## II

The law of standing to suppress materials derived from an illegal search in the case of an offense where possession is an essential element has been evolving and is fully discussed in recent opinions of this court. *United States v. Galante,* 547 F.2d 733, 736–38 (2d Cir. 1976); *United States v. Tortorello, supra,* at 812–13. These opinions establish that despite intimations of its mortality in *Brown v. United States,* 411 U.S. 233, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which grants automatic standing to those accused of the commission of a crime which requires proof of possession such as the count here based on 18 U.S.C. § 659, is still the law of this circuit. The government does not argue otherwise. It takes the position however that with respect to the conspiracy count, since actual possession of the stolen goods is not a necessary element of the crime, the automatic standing rule of *Jones* is not applicable. We agree and have so held, *United States v. Mejias,* 552 F.2d 435, 445 (2d Cir. 1977); *United States v. Galante, supra,* at 738.[3] The question before us then is whether the appellees have actual as distinguished from automatic standing.

As to actual standing, *Jones v. United States, supra,* 362 U.S. at 267, 80 S.Ct. at 734, held that "anyone legitimately on premises where a search occurs may challenge its legality . . . when its fruits are proposed to be used against him." *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2124, 20 L.Ed.2d 1154 (1968) held that the Fourth Amendment right does not depend upon a property right in the invaded place "but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion." The government does not dispute, nor could it, that the defendants' standing here may be based upon presence. In its brief it concedes that the appellees clearly had a reasonable expectation of privacy in the office on the second floor of the structure, but denies that it extended to the garage which it contends was a part of the building totally distinct and separate.

■ We have examined the photographs and the floor plan of the premises at 226

---

**2.** In addition to the five named defendants, the notice of appeal also named Ernest L. Montevecchi and Arnold Schneider who were partners in "No-Name Transportation Inc.," the lessee of the garage subjected to the search. By stipulation dated January 10, 1977, the appeal was withdrawn as to these two defendants.

**3.** Where defendants are charged in a multi-count indictment with possessory crimes as well as conspiracy, the difficulties inherent in granting standing as to some counts and not others has been pointed out in *United States v. Galante, supra,* at 740 n. 13. The government proposes to solve them and avoid any prejudice to the defendants by moving for a severance of the conspiracy count and trying the defendants solely on this charge. Since we find actual standing here by virtue of their presence on the premises, we need not address the question of the viability of the procedure proposed.

39th Street. They reveal a very modest two-story building with a prominent sign on the front over the driveway into the garage proclaiming that it housed "No-Name Transportation Inc.", its address, phone number and "Import-Export-Domestic Trucking." In addition to the customary roll-up garage door, there was a normal size door immediately to its left as the building is faced. This door opened onto a stairway to the upstairs offices as well as another door on ground level which led into the garage. As we have indicated, the entire building was leased to "No-Name Transportation Inc." and the government's concession that the defendants were lawfully entitled to privacy while upstairs is an admission that they were lawfully on the premises as licensees or guests. We are asked therefore to find that somehow this modest and seemingly cramped quarters must be severed, for expectation of privacy purposes, into separate parts. In view of the physical layout described we see no logical reason to make such a narrow and technical distinction. As indicated in *Mancusi v. De-Forte, supra,* at 367, 88 S.Ct. 2120, the word "houses" used in the Fourth Amendment is not to be taken literally and the protection of the Amendment may be extended to commercial premises. *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) (offices); *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) (private garage). The ostensible business conducted was domestic trucking and in the limited quarters here involved there is no valid reason to separate the carton loading operation taking place in the garage from that of the upstairs office. Cartons of Stanley tools were found both upstairs and downstairs and the clandestine enterprise was taking place in both locations. The presence of the staircase does not diminish the expectation of privacy on either level. We limit this holding to the physical facts before us and do not suggest that in other cases involving a more elaborate enterprise or more spacious facilities the conclusion would be the same.

The cases relied upon by the United States are factually distinguishable. In *United States v. Calhoun,* 510 F.2d 861 (7th Cir.), cert. denied, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975) the defendant used a disabled, abandoned truck as a place to conceal illicit drugs. In addition to its main holding that exigent circumstances justified a warrantless search of the truck, the court in questioning Calhoun's standing, pointed out in a footnote that at the time of the arrest and search the defendant was not in the truck but outside. The court noted that if "X's friend's home is searched while X is a guest therein, X too may have standing to object to the search. However, once X quits the premises the security of X's person is not offended by a search of his friend's home made in X's absence." Id. at 866 n. 4. The appellees here were concededly on the premises at the time of the search.

In *United States v. Miller,* 145 U.S.App. D.C. 312, 449 F.2d 974 (1971) the defendant, after robbing a liquor store, fled to a nearby dentist's office which consisted of a 5-room suite. He was pursued and arrested. The police seized a bottle of liquor on a shelf in the dentist's office later identified as having come from the robbed liquor store. Defendant's sister, who was also in the doctor's office, told the police that he had placed an object wrapped in rags in a drawer in the dentist's desk. The court, while holding that the defendant had standing to suppress the whiskey bottle, found that he had no standing to suppress the object in the dentist's desk drawer—a gun. The appellant's own testimony admitted that he had no authority to open or use the drawer. That this case is inapposite hardly needs elaboration.

Similarly, in *Northern v. United States,* 455 F.2d 427 (9th Cir. 1972), the defendant was held to have no standing to object to a search which took place in the bedroom of another person with whom he shared an apartment. However, the evidence established that the bedroom was occupied exclusively by the other person and the defendant had no permission to use it.

Since the government conceded that the defendants were lawfully present and had

the expectation of privacy in the upstairs offices, they could reasonably anticipate similar privacy from intrusion in the downstairs garage which was an integral part of the "No-Name" operation. We recognize that this decision may well preclude the government from prosecuting these defendants, but this is the result of the exclusionary rule by which we are bound.

Affirmed.