**UNITED STATES of America**

v.

**Julio MOREJON–PACHECO, Luis Ernesto Triana-Digas, Rene Benitez, Jorge Palenzuela and Virgen Palenzuela.**

**No. 77–437–CR–JLK.**

United States District Court, S. D. Florida.

Feb. 6, 1978.

Richard Woolf, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Martin Blitstein, Walter E. Gwinn, Melvyn Kessler, Miami, Fla., for defendants.

## ORDER DENYING MOTION TO SUPPRESS

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the motion of the defendants to suppress evidence. The court, having considered the record and being fully advised in the premises, finds and concludes that the motion should be denied.

This motion was filed by the defendants Jorge Palenzuela and Virgen Palenzuela and was joined in by the remaining codefendants, Julio Morejon-Pacheco, Luis Ernesto Triana-Digas, and Rene Benitez. The matter was referred to U. S. Magistrate Sorrentino, who conducted an evidentiary hearing and filed a written report recommending that the motion be denied. All defendants filed or joined in objections to the Magistrate's report. After having carefully considered the objections, the Magistrate's report, the record, and the transcript of the evidentiary hearing, this court has concluded that the Magistrate's recommendation is correct and should be carried out.

### I. *Facts*

The facts surrounding the seizure of the evidence sought to be suppressed are briefly as follows. On July 18, 1977, a Special Agent of the Drug Enforcement Agency in undercover capacity went to the home of the defendants Jorge and Virgen Palenzuela with defendant Morejon in order to purchase some cocaine for which he had been negotiating as part of a conspiracy investigation. The deal was not consummated and the agent left. While he was in the home, however, he observed two packets of cocaine, a scale on which the cocaine was measured, and a glass in which a field test

as to the quality of the cocaine was made. He also observed a number of people entering the house and could not be sure how many left again.

Within an hour after the agent left the house with the defendant Morejon, these five defendants were placed under arrest. Morejon and Benitez were arrested at separate locations away from the house; Triana-Digas and the Palenzuelas were arrested in the front yard of the Palenzuela home. A small crowd gathered, and the officers and the agent took the three defendants into the Palenzuela home, searching it for any other co-conspirators who might possess weapons or destroy the contraband that the agent had so recently observed in the house. The agent testified that because of the number of people who had gathered he feared for the safety of the officers and those under arrest. He also thought that there might be co-conspirators still inside the house with access to weapons as well as to the cocaine. All defendants seek to suppress the items which were seized during this search, including a loaded automatic weapon and one-half kilogram of cocaine.

## II. *Standing*

A threshold issue not fully analyzed in the Magistrate's report is that of the standing of defendants Morejon-Pacheco, Triana-Digas, and Benitez to contest the seizure of the cocaine at the Palenzuelas' home. The defendants argue, the government concedes, and the Magistrate's report concludes that these three defendants have standing because they are charged in Count II of the indictment with possession of the cocaine seized with intent to distribute. The issue to be addressed here is whether the Fifth Circuit still recognizes a count of possession as conferring automatic standing, considering the recent Supreme Court decisions.

The Supreme Court created this concept of automatic standing in *Jones v. U. S.,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), to prevent a defendant from having to give up one constitutional right—protection from self-incrimination—in order to assert another—privacy. The Court sought to eliminate the situation in which a defendant was required to prove what amounted to an essential element of the government's case against him in order to contest an allegedly illegal search and seizure. This protection was fully developed in 1968 when the Court held that "testimony given by a defendant to meet such [standing] requirements should not be admissible against him at trial on the question of guilt or innocence." *Simmons v. U. S.,* 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L.Ed.2d 1247 (1968).

Subsequently, Supreme Court propounded what is now the accepted test for standing under the circumstances arising in this case:

[T]here is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) alleged no proprietary or possessory interest in the premises; and (c) were not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

*Brown v. U. S.,* 411 U.S. 223, 229, 93 S.Ct. 1565, 1569, 36 L.Ed.2d 208 (1973). However, the Court specifically declined to determine whether the *Simmons* decision "makes *Jones'* 'automatic' standing unnecessary" and decided to "reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense . . . charged.'" *Brown,* 411 U.S., at 229, 93 S.Ct., at 1569 (citing *Simmons,* 390 U.S., at 390, 88 S.Ct., at 974). This is such a case.

The circuits have split as to whether automatic standing is still available to a defendant who is charged with a possession crime but does not meet either of the other two standards. Hence, automatic standing is still the law in the Second Circuit and in the Ninth Circuit, but has been eliminated in the Sixth Circuit. See *U. S. v. Banerman,* 552 F.2d 61 (2nd Cir. 1977); *U. S. v. Jamerson,* 549 F.2d 1263 (9th Cir. 1977); *U. S. v. Delguyd,* 542 F.2d 346 (6th Cir. 1976).

The Fifth Circuit had adopted the automatic standing rule established by *Jones*. *See U. S. v. Holmes*, 521 F.2d 859 (5th Cir. 1975). Although subsequent case law in the circuit indicates that the three *Brown* standards operate independently to accord standing (*See U. S. v. Smith*, 550 F.2d 277 (5th Cir. 1977) (no evidence offered establishing standing under "*any* of the three categories set out in *Brown*").), which would indicate that a defendant charged with a possession crime should be granted standing, the narrow question presented here is still undecided.

In *U. S. v. Archbold-Newball*, 554 F.2d 665 (5th Cir. 1977), the defendants were held not entitled to "constructive standing" derived from *Jones*. In dicta, the court quoted language from *Brown* to the effect that

> *Simmons* has removed the danger of coerced self-incrimination. We simply see no reason to afford such "automatic" standing where, as here, there was no risk to a defendant of either self-incrimination or prosecutorial self-contradiction. [411 U.S., at 1569, 93 S.Ct. 1565.]

554 F.2d, at 679. It would be a mistake, however, to read this language broadly and construe it to do away entirely with automatic standing: in *Archbold* the question of constructive standing was foreclosed because the defendant was not charged with an offense which included the element of possession of the seized item at the time of the seizure. *Archbold* is therefore distinguishable.

█ Since the Supreme Court has specifically reserved the question of automatic or constructive standing where a defendant has been charged with a possession offense concerning the seized property, and since the Fifth Circuit has not construed *Brown* and *Simmons* to overrule *Jones* where the defendant/movant has been charged with a possession offense, this court concludes that *Jones*, supported by category (c) of *Brown*, still presents a viable grant of standing under these circumstances. Therefore, in the case sub judice, defendants Morejon-Pacheco, Triana-Digas, and Benitez must be accorded standing to seek suppression of the evidence seized at the Palenzuelas' house. The Palenzuelas, of course, have standing under all three categories.

### III. *Motion to Suppress*

█ This court finds that the circumstances surrounding the search and seizure are such that this case qualifies for the "threat to safety" exception to the general rule that a warrantless search of a dwelling cannot be made incident to an arrest occurring outside the building. *See U. S. v. Bowdach*, 561 F.2d 1160 (5th Cir. 1977); *McGeehan v. Wainwright*, 526 F.2d 397 (5th Cir. 1976); *Hopkins v. Alabama*, 524 F.2d 473 (5th Cir. 1975); *United States v. Smith*, 515 F.2d 1028 (5th Cir. 1975). The record reflects that the officers had probable cause to fear for their safety and that of the suspects and bystanders. According to the Supreme Court, "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden v. Hayden*, 387 U.S. 294, 298–9, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967). Therefore, the Magistrate's recommendation is hereby adopted and it is

ORDERED and ADJUDGED that the defendant's motion to suppress be and the same is hereby denied.

DONE and ORDERED in chambers at the United States District Courthouse, Miami, Florida, this 6th day of February, 1978.