**UNITED STATES of America**

**v.**

**Martin SCHWIMMER and Mario Renda, Defendants.**

**No. 87 CR 423(S).**

United States District Court, E.D. New York.

April 14, 1988.

---

Andrew J. Maloney, U.S. Atty. for E.D. New York, and Edward A. McDonald, Organized Crime Strike Force, E.D.N.Y. (Bruce Maffeo, Sp. Atty., of counsel), for U.S.

Robert S. Fink, New York City (Kostelantz Ritholz Tigue & Fink, New York City, Kathryn Keneally, of counsel), for defendant Schwimmer.

Ronald G. Russo, New York City (Budd Larner Gross Picillo Rosenbaum Greenburg & Sade, New York City, Cynthia R. Finn, of counsel), for defendant Renda.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Codefendants Martin Schwimmer and Mario Renda are charged in an eighty-nine count superseding indictment with violations of various federal criminal statutes. They move to suppress physical evidence or, in the alternative, for a hearing on these motions. In addition, Schwimmer moves to dismiss or sever one count of the indictment, and for further discovery and a bill of particulars.

I. Schwimmer's Motion to Dismiss or Sever Count 79 of the Superseding Indictment

A. *Facts*

On July 29, 1986, Schwimmer was charged in a one-count indictment with obstruction of justice in connection with a grand jury investigation. *See* Indictment, *United States v. Schwimmer*, 86 CR 528 (JMcL). The indictment charged that a special grand jury had been empanelled to investigate possible federal criminal violations by members and associates of the Lucchese Crime Family. The grand jury was allegedly investigating transactions that occurred in 1983 and 1984 in which Frank Manzo, Leone Manzo, and William Barone, who were Lucchese members and associates, purchased and sold $250,000 in bearer bonds issued by Sullivan County, New York. Schwimmer allegedly furnished the grand jury with a false document concerning these transactions.

Prior to trial, Schwimmer moved to dismiss the indictment. This motion was denied. *United States v. Schwimmer*, 649 F.Supp. 544, 547–48 (E.D.N.Y.1986).

Trial began on January 12, 1987. At the close of the Government's case, Schwimmer moved for a judgment of acquittal under Fed.R.Crim.P. 29(a). The motion was denied.

On January 24, 1987 the jury was discharged without having reached a verdict. Schwimmer then moved for a judgment of acquittal under Fed.R.Crim.P. 29(c). This motion also was denied.

On July 27, 1987 a superseding indictment was filed against Schwimmer and Mario Renda. The indictment alleges that Schwimmer was a financial consultant to, and agent of, First United Fund, Ltd. ("First United") and that Renda was president and owner of First United and First United Financial Corporation, which wholly owned First United. Schwimmer is also alleged to have been a fiduciary of employee benefit plans affiliated with Local 38 of the Sheetmetal Workers International Association of the AFL–CIO ("Local 38") and Local 810 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 810").

The gravamen of the superseding indictment is that Schwimmer and Renda invested funds from the employee benefit plans of both unions in long-term certificates of deposit ("CDs") issued by banks and savings and loan associations throughout the United States. The defendants allegedly diverted over $14 million in illegal payments derived from the investments to off-the-books accounts that were concealed from First United's auditors and the benefit plans' trustees, employees, and beneficiaries. The indictment also alleges that the defendants used part of this money to pay kickbacks to Local 810 officials, as well as for defendants' self-enrichment.

Count 1 alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. This count alleges the existence of an enterprise, a racketeering conspiracy, and a pattern of racketeering activity. Eighty-five predicate acts are alleged. Predicate Acts 1 through 32 concern investments made with Local 38 plan funds. Predicate Acts 33 through 82 concern investments made with Local 810 plan funds. Predicate Act 83 alleges kickbacks made to Local 810 officials. Predicate Act 84 alleges that Renda embezzled funds from Local 810. Finally, Predicate Act 85 repeats the obstruction of justice charge for which Schwimmer was indicted in 1986.

The racketeering predicate acts alleged in Count 1 form the basis of most of the other eighty-eight counts in the superseding indictment. Counts 2 through 31 reallege and incorporate Predicate Acts 3 through 32. Counts 32 through 77 reallege and incorporate Predicate Acts 36 through 52 and 54 through 82. Counts 2 through 77 allege racketeering, in violation of 18 U.S.C. §§ 2, 1954. Count 78 incorporates Predicate Act 84, the embezzlement charge against Renda, and alleges a violation of 18 U.S.C. §§ 2, 644. Count 79 incorporates Predicate Act 85, the obstruction of justice charge against Schwimmer, and alleges a violation of 18 U.S.C. §§ 2, 1503.

Count 80 alleges a conspiracy by the defendants to defraud the United States, in violation of 18 U.S.C. § 371. Finally, Counts 81 through 89 allege tax evasion by both defendants, in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7201.

Schwimmer's motions focus on Count 79. He first moves under Fed.R.Crim.P. 14 to try Count 79 separately from the other counts in the superseding indictment. Schwimmer argues that the Government will seek to prove Count 79 by introducing evidence that Schwimmer was involved with organized crime figures. He argues that the stigma arising from such allegations will prejudice his ability to defend himself on the other counts. He asserts that Count 79 arises from a separate scheme than that alleged in the other counts, and could be tried quickly and efficiently, as it was in January 1987. Schwimmer moves in the alternative for dismissal of Count 79.

### B. *Discussion*

I will first address the motion to dismiss. The Court has thrice entertained such a motion. Prior to trial, it rejected Schwimmer's argument that the obstruction of justice charge, as framed in the indictment, was legally insufficient. During and after trial, it rejected Schwimmer's argument that the evidence could not support a finding of guilt beyond a reasonable doubt.

The present motion asserts nothing more than did the three previous ones. Schwimmer does not argue that the substantive law has changed since his first motion was denied. He also fails to allege any new facts in support of his motion for a judgment of acquittal. After reviewing the record, I remain unpersuaded that the motion to dismiss should be granted.

█ I now turn to Schwimmer's motion for a separate trial of Count 79. Schwimmer does not contend that Count 79 was improperly joined in the superseding indictment under Fed.R.Crim.P. 8(a). Instead, he urges severance under Fed.R.Crim.P. 14. Rule 14 provides, in relevant part: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... in an indictment ... or by such joinder for trial together, the court may order an election or separate trials of counts, ... or provide whatever other relief justice requires." A severance motion is addressed to the sound discretion of the trial court. *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *United States v. Werner*, 620 F.2d 922, 926 (2d Cir.1980). The motion should be granted only if the defendant shows that he will be substantially prejudiced in the absence of a severance. *Id.* at 928–29. In this case, I am not satisfied that Schwimmer has met this burden.

First, the substantive offense charged in Count 79 is already alleged as a predicate act in Count 1. Schwimmer does not—and cannot—argue that proof of this predicate act may not be offered under Count 1. It is difficult to conceive of prejudicial spillover resulting from introduction of the identical evidence offered to prove Count 79.

Second, Count 79 charges that Schwimmer obstructed justice by attempting to conceal from the grand jury a fraudulent scheme charged in other counts in the indictment. Under these circumstances, the law supports joinder of the obstruction count. *See United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir.), *cert. denied*, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984). Given the functional relationship between Count 79 and other counts, I conclude that severance of Count 79 is unwarranted.

## II. The Motions to Suppress Evidence

### A. *Evidence Seized from First United's Offices*

#### 1. Facts

Prior to October 1984, the Federal Deposit and Insurance Corporation ("FDIC") had begun an inquiry into First United. The FDIC issued administrative subpoenas to, and subsequently interviewed under oath, seven brokers (the "broker-witnesses") who had been employed by First United. The broker-witnesses left First United on September 7, 1984. Shortly thereafter,

First United in an independent civil action secured from a New York State court a temporary restraining order barring the broker-witnesses from doing business with clients they had developed while employed by First United. That civil case was settled on September 27. On October 4, the broker-witnesses began to testify before the FDIC.

In October, FDIC attorneys provided the Organized Crime Strike Force of the Eastern District of New York ("Strike Force") with information procured through the FDIC's investigation of First United. Michael Manning, an FDIC attorney, submitted a twenty-two page affidavit ("Manning Affidavit") that summarized the results of the FDIC's investigation. The Manning Affidavit stated that the FDIC had questioned under oath each of the broker-witnesses. George Hoffman, who acted as counsel to the seven former employees, stated that he had advised all of them that their statements might prove to be against penal interest. All of the broker-witnesses had been employed by First United for at least sixteen months prior to leaving the firm in September 1984. In addition, the Manning Affidavit stated that testimony had been given by Cindy Reilly, Renda's personal secretary from 1981 or 1982 through May 1983.

The Manning Affidavit summarized the testimony of the eight witnesses, which detailed the methods by which First United had allegedly defrauded its clients. One such method was referred to as a "special deal." Under this scheme, a broker-witness, acting under Renda's direction, would select a targeted banking institution from which to procure a loan. The broker-witness would solicit customers to invest in the institution by misrepresenting the interest rate that would be paid by it. Having solicited such customers, First United would procure a loan from the institution. First United made up the discrepancy in interest rate payments with monies received from the party that had received a loan from the targeted institution. A second operation at First United was the brokering of pension funds into long-term CDs without reporting the brokerage commissions.

The Manning Affidavit stated the locations in First United's offices where materials related to special deals and the long-term CD deals could be found. The affidavit did not refer to the civil action that First United had commenced against the broker-witness in state court. It did contain verification of several of the loans made by banks.

The Manning Affidavit was submitted by the Strike Force in support of its application for a warrant to search First United's offices. The Honorable A. Simon Chrein, Chief Magistrate of the Eastern District of New York, heard the application on October 16, 1984. Magistrate Chrein questioned Manning. The magistrate expressed concern that the testimony of the employees might not be reliable because it was unclear whether they had made declarations against penal interest. Magistrate Chrein directed the Strike Force attorney Bruce Maffeo to submit a supplemental affidavit addressing this issue. On the next day, Maffeo submitted an affidavit ("Maffeo Affidavit") in which he opined that the statements by the broker-witnesses exposed them to possible federal criminal prosecution under, *inter alia*, 18 U.S.C. §§ 371, 1341, 1343, and 1962(c), (d). The Maffeo Affidavit also stated that Manning had said that he had made no representations or promises to the broker-witnesses about possible use of their statements in criminal proceedings.

Magistrate Chrein issued a search warrant on October 17, 1984 after finding that there was probable cause to believe that certain property was being maintained on the premises. The warrant authorized agents of the Federal Bureau of Investigation ("FBI") or the Internal Revenue Service ("IRS") to search First United's offices in Garden City, New York—with the exception of the offices and files of Stuart Steinberg, an attorney. Seizure was permitted of books and records related to special deals and long-term CDs concerning First United and specified unions or employee benefit plans. "Books and records" was

defined to include, among other things, computer tapes, and conversations taped by Renda between himself and others. In addition, the warrant authorized the agents to procure the assistance of a non-law enforcement expert in order to use and operate First United's computer terminals.

The search began on October 17 and lasted two days. Agents did not enter Steinberg's office, but did seize files from his secretary's office over the protest of First United's officials. A computer expert assisted in the seizure of computer tapes. Disputed materials were sealed in anticipation of judicial review. Pursuant to a motion made by First United under Fed.R. Crim.P. 41(e), the Honorable Eugene Nickerson of this Court ordered the Government to return certain items seized from the files of Steinberg's secretary. *See In re Application of First United Financial Corp.*, 85 CV 2587 (EHN) (E.D.N.Y. Feb. 26, 1986).

Finally, in a federal civil proceeding in Kansas, Bruce Kahl, one of the broker-witnesses, testified that he believed that the special deals referred to in the Manning Affidavit were legal. He also stated that no one had informed him that the statements he made to the FDIC could prove to be against penal interest.

Schwimmer and Renda move to suppress the evidence seized from First United's offices, and the fruits thereof, on several grounds. First, they assert that the warrant should not have issued because the broker-witnesses were not aware that they were making statements against penal interest. Defendants assert that Magistrate Chrein gave great weight to this factor, and that both the Manning Afffidavit and the Maffeo Affidavit were misleading on this issue. Defendants also assert that the affidavits omitted mention of the lawsuit between First United and the broker-witnesses, which undermined the reliability of the broker-witnesses' assertions. In addition, the defendants argue that the warrant was not supported by probable cause and that its terms were overly broad. Second, the defendants argue that the search violated the express provisions of the warrant, that the search constituted a general search, was overly intrusive, was made in bad faith, and involved the participation of an unauthorized person. Finally, defendants argue that seizure of Renda's recorded telephone conversations was not authorized by either the Federal Rules of Criminal Procedure or the fourth amendment. The defendants have argued in the alternative, for a hearing on these motions.

### 2. Discussion

#### a. *Legitimate expectation of privacy*

■ The fourth amendment protects people from "unreasonable searches and seizures" of their "persons, houses, papers and effects," and provides that warrants to search and seize must be supported by probable cause. U.S. Const. amend. IV. Evidence obtained in violation of the fourth amendment is subject to exclusion at trial. *See Simmons v. United States*, 390 U.S. 377, 389, 88 S.Ct. 967, 973, 19 L.Ed.2d 1247 (1968). Exclusion is called for only if the defendant's own fourth amendment rights are violated. *United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed. 2d 468 (1980). A defendant's rights are not violated unless the "challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." *Id.* (emphasis in original). The defendant bears the burden of proving such an expectation in the searched or seized property. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

Schwimmer asserts that he had a privacy interest in a desk and at certain work areas in First United's offices. The Government represents that it will not introduce evidence seized from these areas. Accordingly, the Court need not address Schwimmer's suppression motion.

Renda argues that his position as president and sole shareholder of First United conferred on him a legitimate privacy expectation in First United's premises, as well as in his records and those of First United and its general counsel. The Government argues that Renda's sole privacy interest was in his personal office at First United.

The only premises referred to in the fourth amendment are "houses." The Supreme Court, however, has rejected a literal reading of this term, and has held that the amendment's protections may extend to commercial premises. *Mancusi v. DeForte*, 392 U.S. 364, 367, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968). The inquiry is whether, in light of all the circumstances, the defendant had a legitimate expectation that the place would be free from "governmental intrusion." *Id.* at 368, 88 S.Ct. at 2124; *see O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714 (1987) (O'Connor, J., joined by three Justices); *id.* 107 S.Ct. at 1505 (Scalia, J., concurring in the judgment).

The evidence offered by Renda—his ownership and control of First United, his participation in the company's affairs, and his office at the company's suite of offices—is sufficient for the Court to find that he had a legitimate expectation of privacy in the entire suite of First United's offices. *E.g., Mancusi*, 392 U.S. at 369, 88 S.Ct. at 2124 (union employee who shared office with other employees had a legitimate privacy interest in the office); *United States v. Banerman*, 552 F.2d 61, 63–64 (2d Cir. 1977) (defendants who had privacy interest in upstairs office also had interest in downstairs garage). In order to dispose of this motion without an evidentiary hearing, I will assume that Renda has shown a privacy interest in the searched premises and seized property, and will move on to the issue of probable cause.

#### b. *Probable cause*

The fourth amendment provides that warrants shall issue only upon a showing of "probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Renda argues that the Manning and Maffeo Affidavits did not support a probable cause finding because they falsely stated that the broker-witnesses had made statements against penal interest, omitted mention of the acrimony between Renda and the broker-witnesses, and did not state facts otherwise sufficient to find probable cause.

▮ In determining whether probable cause exists

the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (brackets and ellipses in original) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). A search warrant affidavit has a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). To mandate an evidentiary hearing on the statements contained in an affidavit, a movant must show that the affidavit contained knowing or reckless falsehoods or omissions that were material on the issue of probable cause. *See United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir.) (citing *Franks* ), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985). If, after setting aside challenged material and considering omitted material, the Court still concludes that probable caused has been shown, then no hearing is required. *See Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85.

▮ Renda has mounted a two-pronged attack on the credibility of the broker-witnesses. His first assertion, which I will accept as true for purposes of this motion, is that the Government deliberately failed to disclose the existence of a civil lawsuit between Renda and the broker-witnesses.

▮ Renda's second assertion is that the Maffeo Affidavit incorrectly stated that the witnesses' statements were against penal interest. Although an affidavit need not pass a specific test regarding the veracity of informants, *see Gates*, 462 U.S. at 230–31, some evidence bearing on reliability

must be presented to the magistrate, *see id.* at 230 n. 6. A statement against penal interest by the informant tends to show veracity. *See United States v. Hunley,* 567 F.2d 822, 825 (8th Cir.1977); *United States v. Spach,* 518 F.2d 866, 870 (7th Cir.1975). In this case, the broker-witnesses detailed Renda's and their roles in carrying out special deals and investment of funds into long-term CDs. According to the Manning Affidavit, the attorney for the witnesses advised each of them that their statements about these issues might prove to be against penal interest. Against this backdrop, Renda offers only the contrary testimony of Mr. Kahl.

Having reviewed the record, I conclude that the Government did present to the magistrate evidence bearing on veracity. First, the statements made by the broker-witnesses clearly implicated them in criminal wrongdoing, as the Maffeo Affidavit states. Second, it is uncontradicted that six of the broker-witnesses were advised that their statements might prove to be against penal interest. Third, the Manning Affidavit contains independent verification that several of the transactions about which the broker-witnesses testified did occur.

Upon a "balanced assessment," *Gates,* 462 U.S. at 234, of all the relevant evidence—the evidence submitted to the magistrate, plus Mr. Kahl's testimony and the existence of a civil suit between Renda and the broker-witnesses—I conclude that the issuance of the warrant was amply supported by probable cause.

First, as stated above, there was evidence tending to establish the reliability of the informants. Second, the informants provided a detailed wealth of firsthand information concerning fraudulent practices at First United; they also specified the location of various documents that constituted evidence of the transactions. *See id.* (tip of informant may be given greater weight than otherwise if it provides detailed, explicit and firsthand description of wrongdoing). Third, the statements of the broker-witnesses were consistent with each other. Fourth, they were made shortly after the informants had left First United. Thus, there was probable cause to believe that crimes had been perpetrated at First United and that evidence of such crimes was in the locations specified in the Manning Affidavit.

### c. *Terms of the warrant*

■ Renda's next attack is on the warrant itself. He first argues that the warrant's terms were overly general and broad. I disagree. The fourth amendment requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A warrant authorizing seizure of documents must be crafted with precision because it is more difficult for those executing the warrant to ascertain the nature of a document than the nature of other physical evidence. *See Andresen v. Maryland,* 427 U.S. 463, 482 n. 11 (1976). In this case, the warrant authorized a search of First United's premises, and provided that the search be conducted within five days of its issuance. It provided for seizure of documents relating to special deals and long-term CDs in connection with First United and specified unions and pension funds. It specifically forbade a search of Stuart Steinberg's offices and files. A review of the warrant's terms convinces me that it was sufficiently precise and provided only those intrusions reasonably necessary to effect its terms. *See id.*

I also reject Renda's next argument, which is that the search warrant improperly authorized seizure of pre-recorded conversations between Renda and others. Fed.R.Crim.P. 41(b)(1) authorizes issuance of warrants to search and seize "property that constitutes evidence of the commission of a criminal offense." Renda does not suggest that these tapes do not constitute such evidence. Accordingly, I conclude that their seizure was proper.

### d. *Execution of the warrant*

■ Renda raises several challenges to the execution of the warrant. First, he argues that the search was invalid because it was executed by a private person—a

computer expert. The assistance of this individual, however, was specifically permitted by the warrant pursuant to statutory authority. 18 U.S.C. § 3105; *see United States v. Clouston*, 623 F.2d 485, 486–87 (6th Cir.1980) (per curiam). Renda's argument on this point is thus rejected.

Renda's next argues that the Strike Force should have employed a less intrusive procedure than a search and seizure. He has failed, however, to present any law in support of this notion. Accordingly, this argument is rejected.

■ Renda's final argument is that the search constituted a general search and went beyond the scope of the warrant. While it is true that several items were seized outside of the warrant's terms, I am not persuaded that this calls for the "drastic remedy" of suppression of the lawfully seized evidence. *United States v. Matias*, 836 F.2d 744, 747 (2d Cir.1988). Such suppression is justified only if the agents acted in "'flagrant disregard' of the warrant's terms." *Id.* at 747–48 (collecting citations). After reviewing the record, I conclude that they did not.

The search, which lasted two days, was well-organized. Agents were briefed prior to the search, and consulted Government attorneys during the search. Pursuant to the warrant, Steinberg's office was not searched. Files were seized from his secretary's office, and it appears that Renda's allegation of improper conduct centers around this seizure. Judge Nickerson held that certain files belonged to Steinberg, and hence were exempt from search or seizure by the terms of the warrant. Nothing in the record, however, supports a conclusion that these files were seized in flagrant disregard of the warrant's terms. Given the unique problems presented by a search for documents, *see Andresen*, 427 U.S. at 482 n. 11, I am persuaded that the agents conducted a good faith search in a manner that intruded only minimally on Renda's privacy rights. Accordingly, items within scope of the warrant will not be suppressed. *See Matias*, 836 F.2d at 747. Renda has failed to point to specific evidence that may have been obtained from the materials illegally seized from the office of Steinberg's secretary. The Government represents that the materials were sealed pending judicial review. If, at trial, Renda argues that certain evidence is the tainted product of the search, the Court will conduct a hearing on this issue.

B. *The Grand Jury Subpoena Served in Hawaii*

1. Facts

■ On October 19, 1984, a grand jury sitting in the Eastern District of New York issued a "forthwith" subpoena directed to the custodian of records located in the basement of 2 South King Street, Honolulu, Hawaii. These records were stored pursuant to an agreement between Franklin Winkler, as bailor, and John Chanin, as bailee. The subpoena commanded the custodian to appear before the grand jury on October 26, 1984 and ordered him to bring all original financial and business records for the period beginning January 1, 1980. The subpoena provided that an appearance would be waived upon receipt of the requested documents. On October 24, 1984, FBI agents served this "forthwith" subpoena in Honolulu on Chanin, and on Jerry Ruthruff, who shared office space with Chanin.

Defendant Renda asserts that the FBI agents behaved in an overbearing manner, and told Chanin that he would either have to fly to New York to testify the following morning or permit the agents to take custody of the documents on the spot. Chanin eventually acceded to this second option. Renda argues that the agents' conduct amounted to a seizure, in violation of the fourth amendment. Renda asserts that the documents seized, and the fruits thereof, should be suppressed. He moves, in the alternative, for a hearing on this motion.

2. Discussion

Assuming arguendo that the agents did "seize" the documents, the suppression motion must be denied. First, the government states that it does not intend to offer either the documents or fruits thereof in its case-in-chief. Second, Renda has utterly

failed to allege any constitutionally-protected interest in either the property seized or the premises searched. *See Payner,* 447 U.S. at 731. Accordingly, his claim of unlawful search and seizure must fail.

### III. Schwimmer's Motions for Discovery and a Bill of Particulars

#### A. *Discovery*

Schwimmer requests discovery and inspection of evidence under Fed.R.Crim.P. 16. The first request is for disclosure of impeachment materials, evidence pertaining to prior bad acts of defendants, and statements made by defendants and their alleged accomplices. The Government represents that it has turned over (1) all exculpatory material within the meaning of *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny; (2) copies of all statements made by defendants, *see* Fed.R.Crim.P. 16(a)(1)(A); and (3) copies of defendants' criminal records, *see* Fed.R.Crim.P. 16(a)(1)(B). The Government has further stated that it does not intend to offer, as part of its case-in-chief, evidence of statements made by defendants to persons known by them to be Government agents. All of the material that the Government has refused to disclose is covered by the Jencks Act, 18 U.S.C. § 3500, and need not be disclosed until the witness has testified on direct examination. *See United States v. Percevault,* 490 F.2d 126, 128–29 (2d Cir.1974). The Court is confident that, in the spirit of professional courtesy that has marked this proceeding, the Government will make these materials available a reasonable period of time before trial.

After careful review of the remainder of Schwimmer's discovery requests, I conclude that the material they seek is beyond the scope of Fed.R.Crim.P. 16, and need not be disclosed prior to trial.

#### B. *Bill of Particulars*

Schwimmer has moved for a bill of particulars under Fed.R.Crim.P. 7(f). The threefold purpose of a bill of particulars is to permit the defendant to prepare an adequate defense, avoid unfair surprise at trial to the defendant, and protect the defendant from double jeopardy. *See United States v. Shoher,* 555 F.Supp. 346, 349 (S.D.N.Y. 1983). In this case, discovery provided to the defendants has been voluminous, and the indictment is drafted with clarity and specificity. After reviewing the record, I conclude that the Government has apprised Schwimmer "of [all of] the charges against him with sufficient precision," *United States v. Persico,* 621 F.Supp. 842, 868 (S.D.N.Y.1985), and that a bill of particulars is not warranted.

### IV. Conclusion

For the forgoing reasons, defendants' motions are denied.

SO ORDERED.