## MANCUSI, WARDEN v. DEFORTE.

No. 844.   Argued April 25, 1968.—Decided June 17, 1968.

*Michael H. Rauch,* Assistant Attorney General of New York, argued the cause for petitioner.   With him on the brief were *Louis J. Lefkowitz,* Attorney General, and *Samuel A. Hirshowitz,* First Assistant Attorney General.

*James L. Lekin* argued the cause and filed a brief for respondent.

MR. JUSTICE HARLAN delivered the opinion of the Court.

In 1959 the respondent, Frank DeForte, a vice president of Teamsters Union Local 266, was indicted in Nassau County, New York, on charges of conspiracy, coercion, and extortion, it being alleged that he had misused his union office to "organize" owners of juke boxes and compel them to pay tribute. Prior to the return of the indictment, the Nassau County District Attorney's office issued a subpoena *duces tecum* to Local 266, calling upon it to produce certain books and records. The subpoena was served upon the Union at its offices. When the Union refused to comply, the state officials who had served the subpoena conducted a search and seized union records from an office shared by DeForte and several other union officials. The search and seizure were without a warrant and took place despite the protests of DeForte, who was present in the office at the time. Over DeForte's objection, the seized material was admitted against him at trial. He was convicted.

On direct appeal to the New York courts,[1] DeForte unsuccessfully argued, *inter alia,* that the seized material was constitutionally inadmissible in state proceedings under the rule laid down in *Mapp* v. *Ohio,* 367 U. S. 643, because the search and seizure occurred without a warrant.[2] DeForte subsequently brought a federal habeas

[1] Those appeals culminated in a petition for certiorari to this Court, which was denied *sub nom. De Grandis* v. *New York,* 375 U. S. 868.

[2] DeForte's petition for certiorari following direct appeal was denied in 1963, more than two years after the Court's decision in *Mapp* v. *Ohio.* Under the rule laid down in *Linkletter* v. *Walker,* 381 U. S. 618, DeForte is entitled to invoke the exclusionary principle established in *Mapp.* See 381 U. S., at 622 and n. 5.

corpus proceeding, in which he made the same contention. The United States District Court for the Western District of New York denied the writ, 261 F. Supp. 579, but on appeal the Court of Appeals for the Second Circuit reversed and directed that the writ issue. 379 F. 2d 897. We granted certiorari, 390 U. S. 903, to consider the State's[3] contention that the Court of Appeals erred in upsetting this state conviction. Concluding that the Court of Appeals was right, we affirm.

## I.

It is desirable at the outset to make clear what is and what is not involved in this case. The decision below was based solely upon a finding that DeForte's Fourth and Fourteenth Amendment rights, see *Ker* v. *California,* 374 U. S. 23, 30–34, were violated by the search and seizure, and that the seized material was therefore inadmissible under *Mapp.* It is on this ground alone that DeForte argues for affirmance. Consequently, there is no occasion to consider whether DeForte might successfully have asserted his Fifth Amendment right against self-incrimination with respect to the use against him of the seized records. Cf. *United States* v. *White,* 322 U. S. 694; *Wilson* v. *United States,* 221 U. S. 361. Nor is there any need to inquire whether DeForte could have asserted a Fourth or Fifth Amendment claim on behalf of the Union, for he did not do so. Moreover, this is not a case in which it is necessary to decide whether the traditional doctrine that Fourth Amendment rights "are personal rights, and . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure," *Simmons* v. *United States,* 390 U. S. 377, at 389, should be modified. Cf. *id.,* at 390, n. 12. For DeForte claims

[3] The petitioner, Mancusi, is the warden of the New York State prison in which DeForte is confined.

that under the traditional rule he does have standing to challenge the admission against him at trial of union records seized from the office where he worked. The questions for decision, then, are whether DeForte has Fourth Amendment standing to object to the seizure of the records and, if so, whether the search was one prohibited by the Fourth Amendment.

## II.

We deal, first, with the question of "standing." The Fourth Amendment guarantees that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The papers which were seized in this case belonged not to DeForte but to the Union. Hence, DeForte can have personal standing only if, as to him, the search violated the "right of the people to be secure in their . . . houses . . . ." [4] This Court has held that the word "houses," as it appears in the Amendment, is not to be taken literally, and that the protection of the Amendment may extend to commercial premises. See, e. g., See v. Seattle, 387 U. S. 541; Go-Bart Importing Co. v. United States, 282 U. S. 344; Silverthorne Lumber Co. v. United States, 251 U. S. 385.

Furthermore, the Amendment does not shield only those who have title to the searched premises. It was

---

[4] The fact that the seized papers belonged to the Union does not imply of itself that an individual could never have personal standing to object to their admission against him. For example, state officers conceivably might have seized the papers during a search of DeForte's home, and in that event we think it clear that he would have had standing. Wilson v. United States, 221 U. S. 361, is by no means to the contrary, for in that case there was no physical search at all. The only Fourth Amendment standing question in Wilson was whether a corporate officer had personal standing to object to a subpoena duces tecum addressed to the corporation, on the ground that it was overbroad. See 221 U. S., at 375–376.

settled even before our decision in *Jones* v. *United States,* 362 U. S. 257, that one with a possessory interest in the premises might have standing. See, *e. g., United States* v. *Jeffers,* 342 U. S. 48. In *Jones,* even that requirement was loosened, and we held that "anyone legitimately on premises where a search occurs may challenge its legality . . . when its fruits are proposed to be used against him." 362 U. S., at 267.[5] The Court's recent decision in *Katz* v. *United States,* 389 U. S. 347, also makes it clear that capacity to claim the protection of the Amendment depends not upon a property right in the invaded place but upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion. See 389 U. S., at 352. The crucial issue, therefore, is whether, in light of all the circumstances, DeForte's office was such a place.

The record reveals that the office where DeForte worked consisted of one large room, which he shared with several other union officials. The record does not show from what part of the office the records were taken, and DeForte does not claim that it was a part reserved for his exclusive personal use. The parties have stipulated that DeForte spent "a considerable amount of time" in

---

[5] The petitioner contends that this holding was not intended to have general application, but that it was devised solely to solve the particular dilemma presented in *Jones:* that of a defendant who was charged with a possessory offense and consequently might have to concede his guilt in order to establish standing in the usual way. However, this limited reading of *Jones* overlooks the fact that in *Jones* standing was held to exist on two distinct grounds: "(1) [The circumstance that] possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized . . . . (2) *Even were this not a prosecution turning on illicit possession,* the legally requisite interest in the premises was here satisfied . . . ." 362 U. S., at 263. (Emphasis added.) Thus, the second branch of the holding, with which we are here concerned, was explicitly stated to be of general effect.

the office, and that he had custody of the papers at the moment of their seizure.[6]

We hold that in these circumstances DeForte had Fourth Amendment standing to object to the admission of the papers at his trial. It has long been settled that one has standing to object to a search of his office, as well as of his home. See, *e. g., Gouled* v. *United States,* 255 U. S. 298; *United States* v. *Lefkowitz,* 285 U. S. 452; *Goldman* v. *United States,* 316 U. S. 129; cf. *Lopez* v. *United States,* 373 U. S. 427; *Osborn* v. *United States,* 385 U. S. 323. Since the Court in *Jones* v. *United States, supra,* explicitly did away with the requirement that to establish standing one must show legal possession or ownership of the searched premises, see 362 U. S., at 265–267, it seems clear that if DeForte had occupied a "private" office in the union headquarters, and union records had been seized from a desk or a filing cabinet in that office, he would have had standing. Cf. *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344; *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385. In such a "private" office, DeForte would have been entitled to expect that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors. It seems to us that the situation was not fundamentally changed because DeForte shared an office with other union officers. DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups. This expectation was inevitably defeated by the entrance of state officials, their conduct of a general search, and their removal of records which were in DeForte's custody. It is, of course, irrelevant that the

---

[6] See Joint Appendix 51–52.

Union or some of its officials might validly have consented to a search of the area where the records were kept, regardless of DeForte's wishes, for it is not claimed that any such consent was given, either expressly or by implication.

Our conclusion that DeForte had standing finds strong support in *Jones* v. *United States, supra.* Jones was the occasional occupant of an apartment to which the owner had given him a key. The police searched the apartment while Jones was present, and seized narcotics which they found in a bird's nest in an awning outside a window. Thus, like DeForte, Jones was not the owner of the searched premises. Like DeForte, Jones had little expectation of absolute privacy, since the owner and those authorized by him were free to enter. There was no indication that the area of the apartment near the bird's nest had been set off for Jones' personal use, so that he might have expected more privacy there than in the rest of the apartment; in this, it was like the part of DeForte's office where the union records were kept. Hence, we think that our decision that Jones had standing clearly points to the result which we reach here.

## III.

The remaining question is whether the search of DeForte's office was "unreasonable" within the meaning of the Fourth Amendment. The State does not deny that the search and seizure were without a warrant, and it is settled for purposes of the Amendment that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara* v. *Municipal Court*, 387 U. S. 523, 528–529.[7] We

---

[7] See also *Stoner* v. *California*, 376 U. S. 483; *United States* v. *Jeffers*, 342 U. S. 48; *McDonald* v. *United States*, 335 U. S. 451; *Agnello* v. *United States*, 269 U. S. 20.

think it plain that the state officials' possession of a district attorney's subpoena of the kind involved here [8] does not bring this case within one of those "carefully defined classes." The State has not attempted to justify the search and seizure on that ground, and the New York courts have themselves said as a matter of state law that "[a district attorney's] subpoena duces tecum confers no right to seize the property referred to in the subpoena . . . ." *Amalgamated Union, Local 224* v. *Levine*, 31 Misc. 2d 416, 417, 219 N. Y. S. 2d 851, 853.[9]

Moreover, the subpoena involved here could not in any event qualify as a valid search warrant under the Fourth Amendment, for it was issued by the District Attorney himself,[10] and thus omitted the indispensable condition that "the inferences from the facts which lead to the complaint '. . . be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' *Johnson* v. *United States*, 333 U. S. 10, 14." *Giordenello* v. *United States*, 357 U. S. 480, 486. In *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385, a corporate office was searched for papers which the corporation had refused to deliver in response to a New York District Attorney's subpoena, apparently similar to the one in this case. Speaking for the Court, Mr. Justice Holmes not only held that the seizure of the papers was unjustified but characterized it as "an outrage." *Id.*, at 391.

---

[8] A copy of the subpoena appears in the Joint Appendix, at 22. The subpoena was signed by the District Attorney and directed to the Union as a witness in a criminal action. It ordered the Union to appear before the District Attorney forthwith, and to bring with it specified union records. The subpoena appears to have been issued under the authority of N. Y. Code Crim. Proc. §§ 609–613.

[9] See also *In re Atlas Lathing Corp.*, 176 Misc. 959, 29 N. Y. S. 2d 458; Hagan, Impounding and the Subpoena Duces Tecum, 26 Brooklyn L. Rev. 199, 210–211 (1960).

[10] See n. 8, *supra.*

The objections of both the corporation and the officer were sustained. Thus, there can be no doubt that under this Court's past decisions [11] the search of DeForte's office was "unreasonable" within the meaning of the Fourth Amendment.[12]

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE STEWART joins, dissenting.

Until this case was decided just now it has been the law in this country, since the federal Fourth Amendment exclusionary rule was adopted in 1914, that a defendant on trial for a crime has no standing or substantive right to object to the use of papers and documents against him on the ground that those papers, belonging to someone else, had been taken from the owner in violation of the Fourth Amendment. Heretofore successful objection to use of such papers as evidence has been left to the owner whose constitutional rights had been invaded. In *Wilson* v. *United States*, 221 U. S. 361, decided in 1911, this Court in an exhaustive opinion by Mr. Justice Hughes, later Chief Justice, applied that principle by denying the benefit of the Fourth and Fifth Amendments to a corporate

---

[11] The Court's opinion in *Davis* v. *United States*, 328 U. S. 582, does contain dicta to the effect that there is a lesser right to privacy when government officials have a "right" to inspect the seized items. See, *e. g., id.*, at 593. However, the only holding in *Davis* was that there had been a valid consent to the search; the case "did not involve a search warrant issue." *See* v. *City of Seattle*, 387 U. S. 541, 545, n. 7.

[12] It is, of course, immaterial that the State might have been able to obtain the same papers by means which did not violate the Fourth Amendment. As Mr. Justice Holmes stated in *Silverthorne Lumber Co.* v. *United States, supra*, at 392: "[T]he rights . . . against unlawful search and seizure are to be protected even if the same result might have been achieved in a lawful way."

officer, even one who had helped to prepare the corporate papers summoned to be produced.[1] In *United States v. White*, 322 U. S. 694, decided in 1944, this Court applied the same principle in rejecting a claim of a union officer that the use of union papers and documents against him under a subpoena *duces tecum* would incriminate him. And indeed the Court in today creating its new rule is unable to cite a single previous opinion of this Court *holding* to the contrary.

In creating this new rule against the use of papers and documents which speak truthfully for themselves, the Court is putting up new hurdles and barriers bound to save many criminals from conviction. I should not object to this new rule, however, if I thought it was or could be justified by the Fourth or any other constitutional amendment. But I do not think it can. The exclusionary rule itself, even as it applies to the exclusion of the defendant's own property when illegally seized, has had only a precarious tenure in this Court. See *Adams* v. *New York*, 192 U. S. 585 (1904); *Weeks* v. *United States*, 232 U. S. 383 (1914); and my concurring opinion in *Mapp* v. *Ohio*, 367 U. S. 643, 661 (1961). I wish to repeat here what I have indicated before, that this seems to me a rather inopportune time to create a single rule more than the Constitution plainly requires to block conviction of guilty persons by keeping out probably the most reliable kind of evidence that can be offered.

A corporate or union official suffers no personal injury when the business office he occupies as an agent of the

---

[1] See also *Hale* v. *Henkel*, 201 U. S. 43 (1906); *Grant* v. *United States*, 227 U. S. 74 (1913); *Essgee Co.* v. *United States*, 262 U. S. 151 (1923); *Goldstein* v. *United States*, 316 U. S. 114 (1942); *Davis* v. *United States*, 328 U. S. 582 (1946); *Wong Sun* v. *United States*, 371 U. S. 471 (1963); *Wild* v. *Brewer*, 329 F. 2d 924 (C. A. 9th Cir. 1964).

corporation or union is invaded and when records he has prepared and safeguarded as an agent are seized. The invasion by the Government may disrupt the functioning of the office, prevent employees from performing their duties, and result in disclosure of business matters the company or union wished to keep secret. But all these are injuries only to the corporation or union as such. The organization has every right to challenge such intrusions whenever they occur—if the seizure is illegal, the records obtained can be suppressed in a prosecution against the organization, and if no prosecution is initiated, the organization can obtain return of all the documents by bringing a civil action. See, *e. g., Go-Bart Importing Co.* v. *United States,* 282 U. S. 344 (1931). Such intrusions, however, involve absolutely no invasion of the "personal privacy" or security of the agent or employee as an individual, and he accordingly has no right to seek suppression of records that the corporation or union itself has made no effort to regain.

The cases decided by this Court have, until today, uniformly supported this view and rejected the sweeping new exclusionary rule now advanced by the Court. Nor in my judgment does any one of the cases relied on by the Court provide support for its holding. The Court's basic premise is that if the union papers had been taken directly from a desk used by DeForte in a union office used only by him, his standing would have been clear, without regard to any other circumstances. I have found no past decision by this Court to that effect. Neither *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385 (1920), nor *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344 (1931), mentions the question of standing at all, and it is hard to see how the Court's inference can be drawn from these cases since in both the party seeking suppression of the documents was in fact the owner of

them. Although in *Silverthorne* the objections had been raised by both the corporation and one of its officers, standing was never even mentioned from the beginning to the end of the opinion, and the Court treated both parties as the "owners" of the documents. 251 U. S., at 391. Consequently, the Court's use of Mr. Justice Holmes' reference to "outrage" in no way supports the Court's holding today, directly or indirectly.

*Jones* v. *United States,* 362 U. S. 257 (1960), also fails to sustain the Court's position. In that case the petitioner had been arrested in a friend's apartment and was charged with possession of narcotics found there. This Court was troubled about the "dilemma" that would be created by requiring the petitioner, in order to secure suppression of the narcotics, to swear that they were taken from his possession, thus confessing his guilt of the very offense charged against him. To avoid this situation the Court held that petitioner could make his motion to suppress without swearing to possession, either because of the dilemma itself or because as a guest in the apartment he had the "legally requisite interest in the premises." 362 U. S., at 263. The Court today puts great stress on the statement in *Jones* that "anyone legitimately on premises where a search occurs may challenge its legality . . . when its fruits are proposed to be used against him." 362 U. S., at 267. With deference I must point out that this sweeping dictum is taken somewhat out of context and cannot possibly have the literal meaning attributed to it. It would be quite a hyperbole, I think, to say that the *Jones* opinion suggested that just any person who happened to be in a house against which an unreasonable search was perpetrated could ask to have all evidence obtained by that search excluded from evidence against him. As was asked by the court below, would that dictum enable a

janitor to escape the use of evidence illegally seized from his boss? The Court apparently recognizes this problem even now, for DeForte clearly was "legitimately on [the] premises" and thus his standing should be obvious, under its reading of *Jones*, without the Court's extended discussion of "reasonable expectation" and the related limiting tests. This reasoning in terms of "expectations," however, requires conferring standing without regard to whether the agent happens to be present at the time of the search or not, a rather remarkable consequence of the statement in *Jones*. In fact the Court's opinion indicates to me that the Court is preparing the way to use *Jones* to eliminate entirely the requirement for standing to raise a search and seizure question and to permit a search to be challenged at any time, at any place, and under all circumstances, regardless of the defendant's relationship to the person or place searched or to the things seized. Any such step would elevate the Fourth Amendment to a position of importance far above that of any other constitutional provision, compare *Flast* v. *Cohen, ante*, p. 83, and would make it more difficult for the government to convict guilty persons who can make no claim to redress in any form since they suffered no invasion of any kind by the search itself. I would prefer to return to *Jones* itself, where we made quite clear throughout the opinion that while common-law concepts of property ownership were not controlling, standing was not automatically conferred on "anyone legitimately on [the] premises." We stressed:

> "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." 362 U. S., at 261.

In the present case I think it is entirely clear that the search was not "directed" against DeForte personally, but was addressed to and aimed at the Union and designed to secure from the Union papers belonging to the Union. The search occurred in a large room, which DeForte shared with a number of others, and the records were not taken from files and drawers used exclusively by him for his own private purposes. The police had been investigating a large conspiracy perpetrated through the Union and at the time were primarily interested in getting more information about the operation of the Union. The records taken were those that had been listed in a subpoena addressed to the Union itself, and since the Union had raised no objection to the subpoena, it was under a duty to turn over the records. Compare *Hale* v. *Henkel*, 201 U. S. 43 (1906).

Undoubtedly, I suppose, even if the Union's papers here should be returned either to the Union or to the defendant, the State could, on a new trial, summon the papers and get them and use them.[2] A rule which encourages such circumvention as that is hardly the kind of principle to which this great Court should give birth. I disclaim any responsibility whatever for the new rule.

MR. JUSTICE WHITE, dissenting.

Although the Fourth Amendment perhaps protects the individual's private desk in a union office shared with other officers or employees, I dissent from the Court's extension of the protected area to the office door.

---

[2] Since the State had obtained a subpoena for these documents even before the search, the new subpoena would not be an invalid "fruit" of the illegal seizure. Compare *Silverthorne, supra.*