OPINION OF THE COURT
Ira Gammerman, J.
Defendants are charged with possession of a loaded weapon (violation of Penal Law, § 265.02); possession of a defaced firearm (violation of Penal Law, § 265.02, subd [3]); and possession of a controlled substance in the eighth degree (violation of Penal Law, § 220.03). They move pursuant to CPL 710.20 to suppress the gun and drugs seized at the time of their arrest.
A pretrial hearing was conducted at which two police officers, William Munoz and Denis Johnston, testified. Based on that testimony, the court makes the following finding of facts:
During the summer of 1977, the owner of the building at 445 E. 138th Street, Bronx, New York, spoke to one or more of the police officers at the 40th Precinct and requested that the police make periodic checks of the unoccupied apartments in the building, because of the owner’s concern about arson. In response to this request, police officers checked the unoccupied apartments in the building on a more or less regular basis, every 7 to 10 days.
The building consists of 16 to 20 apartments, some of which are rented and occupied, and some of which are vacant. Although the apartment in which defendants were arrested was vacant when the building was previously checked, neither Officer Munoz nor Officer Johnston knew whether or not the landlord had rented the apartment between the last date on which the building was checked, and November 15, 1977, the date on which the defendants were arrested.
On November 15, 1977, at about 9:30 a.m., both police officers were "checking out” the building. Arriving at the second floor, they heard noises coming from the apartment in which they later found defendants. The door leading from the hallway into the apartment was ajar, and the officers observed no furniture in the room adjacent to the partially opened door. They entered the apartment and proceeded to a closed door inside. Upon opening that door, the officers observed both defendants sitting on a bed. At that point, both officers heard a thud. A search of the room was made and a .45 caliber automatic pistol was found under the bed; a tinfoil packet *1117 containing a white powder (presumably a controlled substance) was recovered from a night table adjacent to the bed.
In determining whether to suppress this evidence seized as a result of a warrantless search, the court must resolve two issues: (1) defendants’ standing to challenge the legality of the search and seizure; and (2) assuming such standing, whether or not the police action violated the Fourth Amendment’s prohibitions.
In Jones v United States (362 US 257), the Supreme Court held that a defendant has automatic standing to challenge a search and seizure where a material element of the offense charged is possession of the property seized in the course of the search. The People argue that the Supreme Court has recently limited the concept of "automatic standing” in Rakas v Illinois (439 US 128). Rakas, however, did not involve a possessory crime, but rather a charge of armed robbery supported by evidence seized from the car of a third person. Here, defendants are charged solely with possessory crimes and have the "automatic standing” established in Jones (supra; see United States v Riquelmy, 572 F2d 947; United States v Oates, 560 F2d 45). In Rakas, the Supreme Court specifically stated: "We have not yet had occasion to decide whether the automatic-standing rule of Jones survives our decision in Simmons v. United States, 390 U. S. 377” (439 US 128, 135, n 4).
Jones, therefore, continues as authority.
The determination of whether a defendant’s substantive Fourth Amendment rights were violated is, in cases involving Jones-type "automatic standing”, a separate inquiry from defendant’s standing to contest the search and seizure. In Rakas, the Supreme Court subsumed these two issues under one analysis. However, there both standing and validity of the search were both bottomed on the defendant’s legitimate expectations of privacy while riding in the car of another. Rakas and his codefendants were not charged with possessory crimes and thus did not obtain "automatic standing”. The court there recognized that automatic standing entails distinct analytical issues.
Once the issue of "automatic standing” has been resolved, the merits of the motion to suppress turn on well-established considerations of probable cause (see United States v Oates, supra). Defendants rely on their right to be free from unreasonable governmental intrusion. They have not claimed *1118 any possessory right to the premises. (No evidence was offered by either side as to their status there, other than the proof that the front room of the apartment was unfurnished and the bedroom was not.) Even without legal possession of the searched premises, defendants may have a right to a reasonable expectation of privacy (see Mancusi v De Forte, 392 US 364; Katz v United States, 389 US 347; United States v Parizo, 514 F2d 52). The court concludes that under the facts of this case, the intrusion of the police into the apartment was not reasonable.
The burden of going forward to establish the legality of the police conduct in the first instance, of showing probable cause to enter the apartment, is on the People. (People v Berrios, 28 NY2d 361; People v Di Stefano, 38 NY2d 640.) It is undisputed that a number of the apartments in the building were rented. It is further undisputed that the police officers were unaware of whether or not the apartment occupied by the defendants had been rented to them by the landlord. Absent that knowledge, the police officers did not have the right to assume that the noises they heard coming from the apartment were made by potential arsonists, rather than by those with a reasonable expectation of privacy in that apartment. In a multiple dwelling, probable cause must be shown for each apartment searched (People v Rainey, 14 NY2d 35). Although the officers obviously entered the apartment in good faith, the court concludes that probable cause for that entry did not exist.
The motion to suppress the gun and the tinfoil containing white powder is, therefore, granted.