*965 OPINION OF THE COURT
William E. Garnett, J.
This case presents the issue of when and under what circumstances an employee has a legitimate expectation of privacy in his or her workplace.
On September 10, 1992, this court conducted a combined Dunaway, Mapp, and Huntley hearing.
The only witnesses were Police Officers Davis and Russo.
I make the following findings of facts:
On September 8, 1991, Police Officers Davis and Russo were walking down a common hallway inside an apartment building at 225 Parkhill Avenue, Staten Island, New York. The officers had entered the building through its unsecured lobby. The officers had made the common areas of this building part of their routine foot patrol at the request of the building’s management.
As the officers walked down the first-floor hallway, they observed rooms which had been padlocked. One room, which had also been previously padlocked and which had no lock or knob on its door, was open. The door to this single room was ajar and light was emanating from within. Further, there was movement inside the room.
The door had no knob or lock on it. Moreover, the door had no apartment number affixed to it and no markings indicating its use or that the public was excluded.
When the officers entered this single room, the defendant was seated at a chair behind a desk with a lamp. The room contained nothing else. The defendant quickly placed an object between his legs and clutched the object. His body became rigid and he appeared nervous. He was twice asked what he was holding. Both times the defendant replied, "Nothing”.
Officer Russo then saw what he believed to be the butt of a gun between the defendant’s legs. Officer Russo drew his weapon and, shortly thereafter, Officer Davis did the same. When the earlier inquiry regarding the object was reiterated, the defendant conceded that he had a gun and further told the officers that he was a security guard. Officer Russo seized the gun and the defendant was arrested.
Subsequent to the defendant’s arrest, the officers were informed by a supervisor that the defendant was a security guard and that the single room, which the officers had entered, was the security office.
*966 CONCLUSIONS OF LAW
The People aver that the defendant has no standing to contest the legality of the officers’ entrance into the single room. The prosecution’s argument follows that the defendant’s lack of standing to dispute the officers’ justification for entering the room validates the officers’ plain view observation of the gun butt. The defense contends that the defendant had a reasonable expectation of privacy in the "security” room as a consequence of his position as a security guard.
It is the defendant’s burden to establish a reasonable expectation of privacy in an area to contest the legality of a search of that area. (People v Wesley, 73 NY2d 351 [1989]; People v Rodriguez, 69 NY2d 159 [1987]; People v Ponder, 54 NY2d 160 [1981].) The defendant may fulfill that burden by relying on evidence elicited from the prosecution’s witnesses at a hearing. (People v Gonzalez, 68 NY2d 950 [1986].)
In this case, the defendant maintains that he has met his burden by the hearsay evidence elicited from the officers that he was a security officer in the security room at the time of the officers’ intrusion.
In order for a defendant to have a legitimate expectation of privacy in an invaded area, the defendant’s subjective expectation must be "one that society is prepared to recognize as 'reasonable’ ”. (Katz v United States, 389 US 347, 361 [1967] [Harlan, J., concurring]; Rakas v Illinois, 439 US 128, 143-144, n 12 [1978].) Thus, although a defendant may have a subjective belief that he has an expectation of privacy in a specific area, that expectation may not be cognizable if objective, societal standards do not countenance that expectation.
In determining whether a defendant’s expectation is legitimate, a court must weigh and consider "all the surrounding circumstances”. (Rakas v Illinois, supra, at 152 [Powell, J., concurring].) "Among the factors to be considered are whether the individual took precautions to maintain privacy, the manner in which the individual used the premises and whether the individual had the right to exclude others from the premises.” (People v Rodriguez, 69 NY2d 159, 162 [1987].) Therefore, the court must evaluate all of the facts relevant to the premises and the defendant’s relationship to the premises in order to determine whether the defendant had an expectation of privacy in this single room which society would recognize as legitimate.
While an employee can have a legitimate expectation of *967 privacy in his or her workplace, not all areas of a person’s business office are encompassed within the ambit of an objective zone of privacy. (O’Connor v Ortega, 480 US 709 [1987]; Mancusi v DeForte, 392 US 364 [1968]; People v Norberg, 136 Misc 2d 550 [Nassau Dist Ct 1987].) In O’Connor, the United States Supreme Court found that a staff member of a public hospital had a legitimate expectation of privacy in his private office. Years earlier, the Court had concluded that a union official who shared his private office with fellow union employees still had a cognizable privacy expectation in his office. (Mancusi v DeForte, supra.) In both Mancusi and O’Connor, the employees had been subjected to full blown searches of their desks and personal effects. In endorsing an ad hoc approach to the determination of an individual’s legitimate expectation of privacy, the plurality opinion in O’Connor cautioned that: "An office is seldom a private enclave free from entry by supervisors, other employees, and business and personal invitees.” (O’Connor v Ortega, supra, at 717.) Thus, just as it is clear that an individual employee has an expectation of privacy in a locked, private office, it is equally obvious that an employee who has his desk positioned in the middle of an area open to the public cannot reasonably expect privacy from the eye of a stranger who is lawfully on the premises. (See, People v Salamino, 107 AD2d 827 [2d Dept 1985]; People v Saglimbeni, 95 AD2d 141 [1st Dept 1983].) Therefore a person’s legitimate expectation of privacy in a work area will vary depending on an evaluation of the "surrounding circumstances” including the function of the workplace and the person’s efforts to protect his area from intrusion. A receptionist in a hospital emergency room waiting area could not reasonably expect that his or her desk top would not be perused by those who seek to avail themselves of the hospital’s services but could legitimately expect that the drawers of that desk would not be invaded. On the other hand, a doctor would not even expect that his or her private office could be entered without his or her permission.
In People v Norberg (supra) the court ruled that an employee of a gas station had no standing to contest the search of a locked back room in which a police officer found cocaine. To the extent that this opinion intimates that an employee may never have an expectation of privacy in his workplace, this case is irreconcilable with the opinions of the United States Supreme Court. However, the court did further conclude that the defendant had not proffered any evidence to *968 "give rise to a legitimate expectation of privacy” (at 552) except his access to the area as an employee of the station. The defendant’s status vis-á-vis the gas station was alone insufficient to establish standing.
In this case, the facts do not establish that the defendant’s putative expectation of privacy in this single room was reasonable. This room had been previously padlocked. When the officers saw the door, it was partially open and was not marked with a number or sign. There was no sign to indicate that others were excluded from entry. Further, the door was unlocked in that the door had no locking mechanism including no door knob.
This single room contained only the bare rudiments of an office, i.e., a table, a chair and a lamp. Otherwise, this was barren space.
The only evidence of the defendant’s nexus with the room was the hearsay testimony that the defendant was a security guard and that this single, solitary room was the security office. There was no evidence that this room was used for the exclusive use of the defendant or his fellow employees if there were any. Certainly, there is no proof that this was the defendant’s private office so as to invoke the privacy interest recognized in O’Connor (supra) and Mancusi (supra). The defendant has utterly failed to flush out his relationship to this single room.
Moreover, even if the defendant’s contention that this room was the building’s security office be accepted as true, societal expectations would not countenance his contention that he has standing to contest the mere entry of these officers or others. If this single room were the security office, it would reasonably be expected that tenants with safety concerns, building management with questions about security, other security officers doing their jobs and police officers responding to requests for assistance would have access to the "security office”. There is no evidence that this was the defendant’s private office and there is no proof that he had the right to exclude others from merely entering this room. A "security office” has an objective function which is inimical to the defendant’s assertion of a reasonable expectation of privacy.
Thus, after reviewing all of the surrounding circumstances including the precautions that the defendant took to exclude others, the function of the premises and the defendant’s right to exclude others, this court concludes that the defendant has *969 failed to meet his burden of proof to establish that he had a legitimate expectation of privacy in this room sufficient to contest the officers’ mere entry into the room.
When the officers entered the room, they saw the defendant quickly secrete an object between his legs. His body became rigid and he was obviously nervous as he held the object in this peculiar embrace. The officers twice asked the defendant what he was holding and the defendant replied, "Nothing”. In a noncustodial setting, a police officer may inquire about an object "[i]f the individual is carrying something that would appear to a trained police officer to be unusual” (People v Hollman, 79 NY2d 181, 191 [1992]). Clearly, the defendant’s odd behavior concerning this object justified the officers’ inquiries.
When Officer Russo saw what he believed to be the butt of a gun, the officers were possessed of, at least, reasonable suspicion that the defendant was committing a crime. Further, the observation warranted the officers’ drawing of their guns. (People v De Bour, 40 NY2d 210 [1976]; CPL 140.50.)
Despite the fact that the officers drew their weapons before the final question to the defendant, the final inquiry which elicited the defendant’s admission was not custodial interrogation and thus did not require the officers to give Miranda warnings. A police officer may ask questions, without first administering Miranda rights, to clarify a situation and to protect himself or herself. (People v Lediard, 115 AD2d 564 [2d Dept 1985]; People v Johnson, 86 AD2d 165, 168-169 [1st Dept 1982].) In People v Lediard (supra), as the defendant was being arrested, the officer asked him where the gun was. The court held that the defendant’s reply, without the benefit of Miranda warnings, was admissible as a response to a clarifying question. In this case, the officer’s third request to the defendant to identify the object he was holding was a question whose purpose was the clarification of an inherently dangerous situation. Thus, the statement is admissible.
In summary, the defendant lacks standing to contest the officers’ entry into the room, the officers’ inquiries were warranted and the defendant’s admission was the product of a clarifying question whose purpose was the protection of the officers.
Thus, the defendant’s motions to suppress the gun and the statements are denied.