BENDER'S, INC., Plaintiff,

Robert Hart, Plaintiff–Appellant,

v.

William B. WALKER; Airguard Industries, Inc.; John McGrath; Dave Duggers; Lawrence F. Bender, Defendants,

Kavin Rumpel, Detective; City of Louisville, Defendants–Appellees.

No. 99–5164.

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2001.

Before NELSON, SILER and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff, Robert Hart, appeals from the district court's order granting judgment as a matter of law to Defendants, Kavin Rumpel, a City of Louisville Detective, and City of Louisville (the "City"), on Plaintiff's claims for violation of his Fourth and Fourteenth Amendment rights against unreasonable search and seizure under 42 U.S.C. § 1983 and outrageous conduct under Kentucky tort law. For the following reasons, we AFFIRM the district court's order granting judgment to Defendants.

## Background

Lawrence Bender and Plaintiff were employed by Airguard Industries, Inc. ("Airguard"), a manufacturer and distributor of air filters for commercial and residential

markets. Bender began working for Airguard in 1970 and became plant manager at Airguard's Louisville, Kentucky manufacturing plant in 1978. Plaintiff worked at Airguard as a salesman. After Bender left Airguard, he formed his own air filter business, Bender's, Inc., and established a manufacturing facility and office in Jefferson County, Kentucky in April 1994. In October 1994, Plaintiff left Airguard and began working for Bender's, Inc. as an independent contractor in the sales department.

Bender's, Inc. hired Karen Rumpel, the twin sister of Defendant Rumpel, as a temporary secretary to retrieve information from an Airguard computer which included information regarding Airguard product specifications. Karen Rumpel began to suspect Lawrence Bender and Plaintiff of wrong doing and informed her friend, John McGrath, a private investigator. Karen Rumpel informed McGrath that she had been instructed to retrieve Airguard information from Airguard computers, had seen documents and envelopes belonging to Airguard in the offices at Bender's, Inc. and was aware of plans for Bender's, Inc. to purchase Airguard equipment from a current Airguard employee, Richard Webster. The evidence at trial indicated that Plaintiff and Bender often rifled through Airguard's trash at night and removed information that they thought would help Bender's, Inc. in manufacturing and distributing its air filters.

McGrath, part owner of Advantage Security, relayed this information to William Walker, Airguard's president. Walker met with McGrath and his partner, Galen Nelson. McGrath showed Walker the Airguard documents that Karen Rumpel had found at Bender's, Inc. Those documents included a recent memorandum written by Walker, a drawing of Airguard's VMB–904 air filter, and a computer disk containing schematics of Airguard's Vari–Flow filters. Walker eventually hired Advantage Security to investigate the possible theft of Airguard's confidential information and to conduct surveillance of Airguard's New Albany, Indiana and Kentucky facilities.

Thereafter, McGrath contacted Defendant Rumpel and asked if he wanted to help with the investigation to earn some extra money. McGrath told Defendant Rumpel what he had learned from Karen Rumpel regarding the possible theft of Airguard equipment and documents and asked him to conduct surveillance of Airguard buildings for Advantage Security. Defendant Rumpel agreed and was paid $5000 for completing his work.

In addition to Karen Rumpel, McGrath obtained another informant inside Bender's, Inc. named Dave Duggers. Duggers started at Bender's, Inc. in May 1994. In late 1994, Karen Rumpel told Duggers that she felt that some "funny business" was going on at Bender's, Inc. and requested that he speak with McGrath. Duggers testified that he agreed to accompany Karen Rumpel to talk to McGrath because he thought the workings of Bender's, Inc. were "illegal" and "unethical." Thereafter, Duggers met with McGrath, Nelson and FBI Agent Lawrence Wolfenden. They asked Duggers to help them collect evidence of illegal activity at Bender's, Inc. by wearing a voice-activated tape recorder to work, taking photographs inside Bender's, Inc. and periodically reporting to FBI Agent Wolfenden.

Duggers became aware of three deliveries of Airguard manufacturing equipment to Bender's, Inc. One such delivery occurred on or about February 1, 1995 after business hours. Bender asked Plaintiff to accompany him to pick up some equipment he agreed to purchase from Webster, an Airguard employee. Bender and Plaintiff were to meet Webster at a Dairy Queen

and then go with him to a salvage warehouse to pick up the equipment. According to Plaintiff, however, when they reached Diary Queen, Webster told them to remain at the Diary Queen and he would pick up the equipment and bring it to them. Defendant Rumpel testified that in an interview with Webster, Webster stated that he was delivering the Airguard equipment to Bender in exchange for a job at Bender's, Inc. And contrary to Plaintiff's testimony, Webster further stated that Bender and Plaintiff drove to Airguard and loaded the equipment onto the truck themselves. At any rate, Plaintiff and Bender drove the equipment back to Bender's, Inc. and unloaded it inside the plant.

Duggers took photographs of this equipment and other binders and envelopes located at Bender's, Inc. with Airguard's name on them. Duggers delivered the film to McGrath. Duggers further testified that he overheard a conversation between Lawrence Bender, Plaintiff and Ray Bender, co-owner of Bender's, Inc. following the delivery of the equipment where Ray Bender told Lawrence Bender and Plaintiff that he would not "write a check for hot material." (J.A. at 232–33.)

On February 4, 1995, McGrath and Defendant Rumpel met with Duggers to examine the photographs that Duggers had taken. McGrath then called Walker, who confirmed that the equipment in question belonged to Airguard and had not been legitimately sold to anyone else. On February 5, 1995, Defendant Rumpel informed his superior officer at the City of the alleged criminal activity occurring at Bender's, Inc., at which point, he was instructed to investigate the case. Defendant Rumpel further testified that from that point on, he investigated the activity at Bender's Inc. as a City police officer and did not receive any compensation from Advantage Security for that work.

The following day, Defendant Rumpel and other City police officers arrived at Bender's, Inc. According to Defendant Rumpel, McGrath accompanied them as a representative of Airguard to help identify the stolen property. The police told Bender that they were looking for stolen equipment and requested that he sign a consent to search form. Bender agreed.

The officers saw new Airguard equipment and asked Bender about it. Bender then showed the officers a receipt that he claimed to have been given after purchasing the equipment. Defendant Rumpel testified that he immediately suspected that the receipt was "bogus." According to Defendant Rumpel, the equipment looked new even though Bender claimed to have purchased used equipment. Defendant Rumpel further testified that while Bender claimed to have purchased the equipment from Airguard, the receipt was from R & L Supply. In addition, there were no serial numbers listed for the equipment and the prices and quantities on the receipt did not match up. Furthermore, the alleged purchase price of the equipment was $3730, while the equipment was worth $25,000 to $75,000.

Bender, thereafter, withdrew his consent for the search. Defendant Rumpel left and obtained an authorized search warrant. Defendant Rumpel testified that on his way to the courthouse, he obtained information which led him to believe that R & L Supply was not a legitimate business: the business number listed on receipt was a cellular phone number and the business address was a residence which he thought would be unable to store the Airguard equipment which Bender obtained.

Defendant Rumpel returned with a search warrant. At this point, Airguard's president, Walker, and another Airguard

employee, Frank Savings, arrived at the scene to help identify stolen property. The officers searched the premises including the Plaintiff's office, to which Plaintiff did not object. The officers found several three-ring binders with Airguard's name printed on their spines as well as other documents bearing the Airguard logo and/or name. Throughout the search, police officers showed various documents and equipment to Walker and Savings to determine whether the property belonged to Airguard. Walker confirmed that the documents belonged to Airguard rather than Bender's, Inc. Savings was also able to identify several pieces of Airguard equipment, which he claimed were either brand new or had been recently built and which Airguard had never sold to anyone.

The police seized the equipment, but the City was unable to store it due to its size and returned it to Airguard. The police also seized the Airguard binders and various documents which they believed belonged to Airguard, totaling six boxes of documents, as well as a computer and more than two dozen floppy disks from Plaintiff's office. The documents, computer, and disks were taken to the police evidence room.

That same day, the police arrested Bender and charged him with knowingly receiving stolen property worth more than $300.00. Several days later, Plaintiff was arrested, based upon evidence obtained from Webster, for receiving stolen property. According to Defendant Rumpel, after Bender and Plaintiff were arrested the FBI took over the case. The state charges against Plaintiff and Bender were voluntarily withdrawn by the state, with the right to reinstate, in order to clear the way for the FBI and possible federal prosecution. Defendant Rumpel testified that at that time he transferred his files and

some evidence to the FBI. The FBI later returned the files to the City.

Bender's, Inc. thereafter filed a complaint in the Jefferson Circuit Court of Kentucky against Walker, McGrath, and Airguard alleging, *inter alia*, claims for trespass and injuring its business. On July 2, 1996, Plaintiff filed an intervening complaint in the aforementioned action naming, in addition to the previously named defendants, Defendants Rumpel and the City. In his complaint, Plaintiff alleged claims against all defendants under (1) 42 U.S.C. § 1983 for violating his Fourth Amendment rights against unreasonable search and seizure of his property and unreasonable seizure of his person; and (2) Kentucky law for conspiracy to injure his business reputation.

On July 10, 1996, all defendants jointly removed the case to federal court. On August 7, 1996, Plaintiff amended his intervening complaint wherein he added claims for outrageous conduct, abuse of criminal process, and malicious prosecution, but disposed of his conspiracy to injure business reputation claim and added Dave Duggers as a defendant. On July 21, 1997, Plaintiff filed a second amended intervening complaint wherein he alleged actions under (1) § 1983 for violations of his Fourteenth Amendment right of due process and conspiracy to violate that right; and (2) Kentucky law for abuse of criminal process and outrageous conduct.

Shortly before the trial, the parties agreed to transfer the seized property from the City to an independent paralegal. The paralegal was to maintain possession of the items during the pendency of the action and to inventory those items. The paralegal's inventory of the seized property was admitted into evidence without objection. At trial, Walker identified many of the items as belonging to Airguard. The record does not indicate any point at

which Plaintiff identified any item on that list as his personal property or requested that the City return any property to him.

At the close of Plaintiff's case-in-chief, each defendant, except John McGrath,[1] separately moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The district court heard arguments and granted each defendant's motion on January 6, 1999.

At the conclusion of the trial, the court referred any disputes that the parties might have about the disposition of the property to a U.S. Magistrate Judge. On August 23, 1999, the Magistrate Judge held a hearing. Prior to that hearing, Plaintiff examined the seized property and declared that none of it belonged to him. At the hearing, which Plaintiff did not attend, Bender agreed that most of the property belonged to Airguard; therefore, four boxes of documents were given to Airguard while the remaining two were returned to Bender's, Inc. The Magistrate Judge determined that the disputed property, three documents, the computer and the computer disks, belonged to Airguard and should be returned to it.

Plaintiff, Bender and Bender's, Inc. filed their notice of appeal on February 4, 1999. Subsequently, an agreement was reached wherein Plaintiff, Bender and Bender's, Inc. dismissed their appeal of the judgments for Walker, Airguard and Duggers, leaving only Defendants Rumpel and the City as defendants-appellees. On September 14, 1999, Bender and Bender's, Inc. were dismissed as parties to the appeal for want of prosecution. *See Bender's, Inc. v. Walker,* No. 99–5164 (6th Cir. filed Sept. 14, 1999) (order entered by court clerk pursuant to Sixth Circuit Rule 45(a)). Therefore, this case now consists only of Plaintiff Hart's appeal of the district court

order granting judgment as a matter of law to Defendants Rumpel and the City. Plaintiff claims that the district court erred in granting judgment as a matter of law to Defendants on Plaintiff's claims under 42 U.S.C. § 1983 and for outrageous conduct under Kentucky law.

## Standard of Review

"This Court reviews *de novo* a district court's decision to grant judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure." *Jackson v. Quanex Corp.,* 191 F.3d 647, 657 (6th Cir.1999). In reviewing the district court's decision, this Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable doubt. *See id.* Therefore, the district court, in deciding a Rule 50(a) motion, may not perform the essential functions of a jury and weigh evidence or make credibility determinations. *See id.* The decision to grant judgment as a matter of law is only appropriate when "there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable men could differ." *Sawchik v. E.I. DuPont Denemours & Co.,* 783 F.2d 635, 636 (6th Cir.1986).

## Analysis

### I.

Plaintiff claims on appeal that the district court erred in dismissing his § 1983 claim for violations of his Fourth Amendment rights against unreasonable searches and seizures, applicable to the states by the Fourteenth Amendment. Plaintiff claims that Defendants unlawfully searched his office, seized his property, and arrested him. Plaintiff's claims are without merit. We conclude that there

---

1. Apparently, Plaintiff's case against McGrath   has yet to be resolved.

was probable cause for the search of Plaintiff's office, the seizure of the property therein, and for Plaintiff's arrest.

■ Plaintiff first contends that Defendant Rumpel and other City officers illegally searched his office in violation of the Fourth and Fourteenth Amendments. The Fourth Amendment protects the right of individuals to be from unreasonable searches and seizures of their person, houses, papers and effects perpetrated by the government. *See O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). The Fourth Amendment is implicated only if the conduct infringes upon an objectively reasonable expectation of privacy. *See id.* It is well established, however, that an employee has a reasonable expectation of privacy in his office. *See United States v. Anderson,* 154 F.3d 1225, 1230 (10th Cir.1998) (citing *Mancusi v.. DeForte,* 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968)).

■ Where the Fourth Amendment is applicable, a duly authorized warrant supported by probable cause will defeat a challenge to a government-conducted search. Stated differently, where there is probable cause to obtain a warrant and the search is carried out pursuant to that warrant, the Fourth Amendment is not violated. *See Mays v. City of Dayton,* 134 F.3d 809, 813 (6th Cir.1998). "A determination of probable cause simply requires consideration of whether there were reasonable grounds to believe … that the law was being violated on the premises to be searched." *Id.* at 814.

■ Evidence presented at trial indicated that there were reasonable grounds to believe that the law had been violated and that the fruits of a crime were located on the premises of Bender's, Inc. including Plaintiff's office. Defendant Rumpel had information from two sources, Karen Rumpel and Dave Duggers, indicating that Plaintiff and Bender had obtained Airguard documents and property including a computer and computer disks containing confidential information regarding Airguard filters and that the property was located on the premises of Bender's, Inc. Moreover, prior to the search, Duggers had informed Defendant Rumpel that Bender and Plaintiff had recently picked up equipment that was allegedly stolen from Airguard and delivered it to Bender's, Inc. Duggers also showed Defendant Rumpel photographs of Airguard binders and envelopes in the offices at Bender's, Inc. With this information, Defendant Rumpel, after consent to an initial search was withdrawn, obtained a search warrant. This information supports a conclusion that there was reasonable cause to believe that a crime had been committed at Bender's, Inc. or the fruits of a crime were being stored at Bender's, Inc., thus establishing probable cause for the search warrant.

Furthermore, there was probable cause to search Plaintiff's office because of the photographs obtained by Duggers that showed Airguard property in the offices at Bender's, Inc. This information gave the police probable cause to believe that Airguard property was located in Plaintiff's office as well as other offices. Moreover, Plaintiff has not claimed that Defendants exceeded the scope of the warrant or searched in areas where the items they were seeking, i.e., Airguard documents, could not have been found. Plaintiff argues that there were no confidential or trade secret documents or equipment located in his office. However, the police need not take Plaintiff's word that there was no evidence located in his office if there is probable cause to believe that evidence of a crime could be located there. And given the photographs of Airguard documents in Bender's, Inc. offices, it was

reasonable to believe that Airguard binders, envelopes and documents were located in Plaintiff's office. Therefore, probable cause existed to search Plaintiff's office and seize the property therein; thus, the Fourth Amendment was not violated.

■ Plaintiff next argues that the City failed to return his property. This argument is easily disposed of. Plaintiff has failed to identify any property that was seized from his person or his office that belongs to him. When given an opportunity to review an inventoried list of the seized property and identify the property that belonged to him, Plaintiff indicated that none of the property was his. Plaintiff cannot rely on his veritable statement that his property was taken and then intentionally lost. Plaintiff must actually put forth evidence that Defendant Rumpel seized *his* property and lost *his* property. Plaintiff simply states that "there was things missing from my office later after the arrest and after the search that not even on this list." Plaintiff failed to introduce any evidence to show what those "things" were, that they belonged to him, or that they were taken by Defendant Rumpel or any other City officer. Here, there is a complete absence of proof that Defendants seized, lost or stole Plaintiff's property.

■ Plaintiff also argues that he was arrested without probable cause in violation of his Fourth and Fourteenth Amendment rights against unreasonable seizure. To prevail on a claim under § 1983 for wrongful arrest, the plaintiff must prove that the arresting officer lacked probable cause to believe that the suspect committed the crime charged. *See Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999). Probable cause "denotes 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* at 569 (quoting *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir.1988)). Probable cause requires only the probability of criminal activity, not some type of *"prima facie"* showing. *See Criss*, 867 F.2d at 262. Therefore, "[t]he question becomes, viewing the facts in a light most favorable to plaintiff, whether the arresting officers were justified in their belief that plaintiff had probably committed or was committing a crime." *Id.*

■ In the instant case, Defendant Rumpel was justified in believing that Plaintiff had received stolen property and, thus, had probable cause to arrest Plaintiff. First, Defendant Rumpel obtained a statement from Webster regarding his involvement in the theft of Airguard's property which implicated Plaintiff. The statement indicated that both Plaintiff and Bender picked up the stolen equipment. Moreover, there were photographs of the equipment which clearly showed Airguard's name on the property, a fact indicating that the equipment did actually belong to Airguard.

Under Kentucky law, a person is "guilty of receiving stolen property when he receives, retains, or disposes of movable property of another knowing that it has been stolen, or having reason to believe that it has been stolen, unless the property is received, retained, or disposed of with intent to restore it to the owner." Ky.Rev. Stat. Ann. § 514.110(1) (Banks–Baldwin 1999). "The possession by any person of any recently stolen movable property shall be *prima facie* evidence that such person knew such property was stolen." Ky.Rev. Stat. Ann. § 514.110(2) *(emphasis added)*. The information that Defendant Rumpel had at the time of the arrest established a *prima facie* case against Plaintiff for re-

ceiving stolen goods. Specifically, Webster's statement indicates that Plaintiff had in fact taken possession of the Airguard equipment, which Webster, Walker, Savings and other witnesses indicated was stolen. In addition, Plaintiff admits having transported the equipment. Consequently, there was enough information for Defendant Rumpel to reasonably believe that Plaintiff had possession, either actual or constructive,[2] of the equipment. Under Kentucky law, there existed a *prima facie* case that Plaintiff knew the property was stolen and was in receipt thereof. *See* Ky.Rev.Stat. Ann. § 514.110(2). Having established a *prima facie* case, a higher burden to satisfy than establishing probable cause, we conclude that there was probable cause to arrest Plaintiff for receiving stolen property.

Plaintiff argues that Defendant Rumpel did not have probable cause to arrest him for receiving stolen property because he did not and currently does not believe the property was stolen. However, Plaintiff's claim of innocence, and even actual innocence, does not negate the then-existing probable cause underlying his arrest. *See Criss*, 867 F.2d at 262 ("A valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent."). Moreover, that Bender produced a receipt for the equipment does not negate the finding of probable cause. Defendant Rumpel testified that he thought the receipt was "bogus" because (1) Bender claimed he purchased the equipment from Airguard when the receipt listed R & L Supply as the seller; (2) the telephone number and address listed on the receipt for R & L Supply did not belong to a business; (3) the quantities and prices of

the equipment did not add up on the receipt; and (4) the equipment was allegedly sold for under $4000 when it was worth between $25,000 and $75,000. With this information before him, Defendant Rumpel was not obliged to accept Bender's statement that the property had been lawfully purchased and that the receipt was legitimate. *See id.* at 263 ("A [police officer] ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."). Similarly, Plaintiff's argument that his arrest was invalid because Defendant Rumpel had some ulterior motive, i.e., he was being paid $5000, does not negate the finding of probable cause. Even if Defendant was motivated by other factors to arrest Plaintiff, it remains that probable cause existed for Plaintiff's arrest. This Court stated in *Criss* that "[i]f the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's *actual motives are irrelevant.*" *Id.* at 262.

## II.

Finally, Plaintiff claims that the district court improperly granted judgment as a matter of law to Defendants on his "outrageous conduct" claim. Plaintiff claims that Defendant Rumpel's conduct was outrageous and that he should be allowed to recover under *Craft v. Rice*, 671 S.W.2d 247 (Ky.1984). It is apparent that not only has Plaintiff mislabeled this cause of action but misunderstands it as well. In *Craft*, the court stated that a plaintiff could recover for extreme and outrageous conduct

---

2. Even if Plaintiff were to argue that he did not have actual possession of the equipment, he had constructive possession of the equipment by virtue of having helped transport the equipment and unload it at Bender's, Inc.

Plaintiff had access to and knowledge of the location of the equipment, which constitutes constructive possession under Kentucky law. *See Lindsay v. Commonwealth*, 500 S.W.2d 786, 789–90 (Ky.1973).

that intentionally or recklessly causes *severe emotional distress*. *Id.* at 251. The key to this cause of action is that the plaintiff suffers severe emotional distress resulting from intentional or reckless, extreme and outrageous conduct. *See id.* ("[T]he essence of the tort is the interference with [the plaintiff's right to be free of emotional distress].")

Plaintiff has failed to establish evidence that would support a finding that he suffered from severe emotional distress. In fact, Plaintiff has failed to put forth any evidence whatsoever of emotional distress that he may have suffered as a result of the actions of Defendant Rumpel. Moreover, there is no showing that Defendant Rumpel's actions were outrageous. Since Defendant Rumpel had probable cause to conduct the search, seize the property, and arrest Plaintiff, there is no evidence that his conduct was extreme. Therefore, the district court properly concluded that there was a complete absence of proof of the elements of this claim and that Defendants were entitled to judgment as a matter of law.

### Conclusion

The district court properly granted judgment as a matter of law to Defendants in the absence of proof of the essential elements of Plaintiff's claims. Accordingly, we AFFIRM the district court's judgment.