# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20726

United States Court of Appeals
Fifth Circuit

**FILED**
October 4, 2018

Lyle W. Cayce
Clerk

DOCTOR GENE N. BARRY,

      Plaintiff - Appellee

v.

SCOTT M. FRESHOUR; BELINDA WEST; MARI ROBINSON; ANNE
RAUCH; MARY CHAPMAN; DEBBI HENNEKE,

      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, CLEMENT, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Plaintiff Gene Barry is a physician licensed to practice medicine in Texas, who works part-time at the Red Bluff Clinic in Pasadena.[1] Defendants Scott Freshour, Belinda West, Mari Robinson, Anne Rauch, Mary Chapman, and Debbi Henneke are all employees of the Texas Medical Board ("TMB") serving in various roles.

---

[1] As this case comes to us on appeal from a motion to dismiss, we rely on the verified complaint for an account of the facts. *See Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).

No. 17-20726

On May 7, 2015, a TMB employee signed an administrative subpoena instanter[2] on behalf of Mari Robinson, the executive director for TMB. The subpoena targeted "Barry . . . and/or Records Custodian" at the Red Bluff Medical Clinic, requiring them "to personally appear . . . before the [TMB], and . . . provide to [the TMB] the documents" listed in an attachment. The attached list included medical and billing records concerning Barry's patients.

TMB investigators Rauch, Chapman, West, and Henneke then arrived at the clinic, accompanied by U.S. Drug Enforcement Administration ("DEA") agents, Texas Department of Public Safety officers, and Texas Board of Nursing investigators. They demanded that the identified records be handed over immediately. Barry and his attorney, whom he had called to the clinic, refused to consent, prompting some of the officials to leave. But Rauch stayed, insisting that she speak with Freshour, TMB's general counsel, before deciding whether to go. Barry's attorney then called Freshour, who refused to order the investigators to leave.

The investigators then informed the Clinic's Administrator—who also served as its records custodian—that "she could be detained by [the Department of Public Safety]" or that "TMB investigators would merely go through *all* of the clinic's files instead." After this statement, the Administrator decided to comply. The Administrator delivered stacks of files to the investigators, who, in turn, "sat on the floor and [went] through [the] files" with a Department of Public Safety officer. Barry alleges that, contrary to the subpoena's terms, the investigators "did not randomly choose" the records, but

---

[2] The subpoena instanter is defined by the Texas Administrative Code as a subpoena requiring immediate compliance. Specifically, the regulation provides that "[i]f immediate production is not made in compliance with the subpoena, the board, acting through the attorney general, may file suit to enforce the subpoena in a district court in Travis County." 22 Tex. Admin. Code § 195.3(f).

instead "looked through each file in the stack[s] . . . and cherry-picked only the files . . . they believed to be incomplete or deficient."

Barry filed suit on May 6, 2017, seeking relief under 42 U.S.C. § 1983 and alleging a violation of his Fourth Amendment rights. On September 11, 2017, the defendants moved to dismiss, arguing (in pertinent part) that Barry lacked standing to raise his claims and that the state officials were entitled to qualified immunity. The district court denied the motions as to those grounds on October 18, 2017, and the defendants timely appealed.

The Supreme Court has long held that a claimant alleging a Fourth Amendment violation "must have a cognizable Fourth Amendment interest"—a concept known as "Fourth Amendment standing." *Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018). This is so because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969), and collecting cases). In other words, "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (internal quotation marks omitted). This is the plaintiff's burden to prove. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). The Supreme Court has articulated the Fourth Amendment interest as a "reasonable expectation of privacy," defined by "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *United States v. Jones*, 565 U.S. 400, 408 (2012) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

Barry's attempt to establish such an interest is unavailing. Barry neither owns nor operates the Red Bluff Clinic where the records were filed. He is not its records custodian. Instead, he merely works there on a part-time basis.

Barry does not argue that he has an ownership or possessory interest in the records seized. Indeed, he appears to concede as much on appeal. Moreover, Barry has not alleged that the TMB conducted a search of any area in which he had a privacy interest. *Cf. Mancusi v. DeForte*, 392 U.S. 364, 367–68 (1968) (when records seized do not belong to an individual, Fourth Amendment standing is only possible if the search itself violated "a reasonable expectation of freedom from governmental intrusion").

Instead, Barry relies on a list of pure privacy interests in the information the records contain. All but one, as he concedes, are specifically tied to his *patients'* privacy interests in their own medical records. To the extent such interests are constitutionally cognizable, they cannot be asserted by Barry. *Rakas*, 439 U.S. at 133–34. The sole remaining interest he proffers relies on a passing assumption by the Supreme Court when it discussed the merit of a state's justification for a statute regulating speech: *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011). *Sorrell* is a First Amendment case, which merely observes that states have a legitimate interest in protecting the privacy of medical records on behalf of doctors. *See id.* at 571–72. We decline to infer from *Sorrell* a reasonable expectation of privacy in patient records on the part of doctors against the TMB under the Fourth Amendment.

The district court concluded Barry had standing because the records were sought in a proceeding against him and the subpoena was addressed to him personally (though it was also addressed to the records custodian). But the Supreme Court has rejected a "target" approach to Fourth Amendment standing that would look to whether the evidence obtained could be used against the person seeking to challenge the search. *Rakas*, 439 U.S. at 132–38. It has instead focused on whether the person raising the Fourth Amendment claim has a protected property or privacy interest in the place or things

searched. For the reasons we have discussed, Barry does not have such an interest.

Accordingly, Barry has failed to show a sufficient interest to assert a Fourth Amendment claim. Without a cognizable interest in the subpoenaed records, Barry cannot assert a Fourth Amendment violation. His claim must be dismissed.[3] Accordingly, we REVERSE the district court and RENDER judgment in favor of the defendants.

---

[3] We note that the constitutionality of TMB's administrative searches has been a subject of significant litigation of late. Indeed, this court recently held that the agency's use of its subpoena authority to gain immediate access to medical records violated the Fourth Amendment. *See Zadeh v. Robinson*, No. 17-50518, 2018 WL 4178304, at \*\*3–6 (5th Cir. Aug. 31, 2018). The *Zadeh* panel still afforded the TMB officials qualified immunity protection, however, since the search's illegality had not yet been clearly established at the time of the search. *Id.* at \*\*6–7.

The parties contest the meaning and impact of *Zadeh*'s holding, but a key factual distinction establishes its irrelevance: In *Zadeh*, the plaintiff—also a doctor—owned and operated the practice from which TMB seized medical records. *Id.* at \*1. Accordingly, he had a Fourth Amendment interest that Barry does not possess.